Hillsborough, ⎱
June 1, 1926. ⎰

### Patrick F. Burke, *Adm'r, v.* Boston & Maine Railroad.

### Anna M. Ching, *Adm'x, ·v.* Same.

### Loren A. Sanders, *Adm'r, v.* Same.

The rights and duties of adjoining landowners as to surface water which in a state of nature would run from the land of one onto the land of the other are governed by the doctrine of reasonable use.

One who owes a duty to others with regard to the condition of his premises cannot as a matter of law rely upon the continuance of artificial conditions on the land of an adjoining owner which check the natural flow of surface water upon his premises. Whether it would be reasonable for the adjoining owner to change those conditions is a question of fact.

A landowner is not relieved of responsibility for the dangerous condition of his premises by proof that that condition is due to the unlawful or negligent action of a third person, if such action and the resultant danger were known or by the exercise of reasonable care would have been known to such landowner.

An employer is liable to his employee for injury due to defective appliances procured from another if the defect would have been disclosed by such inspection as in the circumstances was reasonable.

If requests for instructions to the jury, though erroneous in form, call to the attention of the court a substantial claim on which the jury should be instructed, the failure of the court to give any instructions upon that subject is error, and the party's rights are saved by his exception to refusal to give the specific instructions requested.

Three actions of Case, to recover damages under 35 U. S. Sts., *c.* 149, for the alleged negligent killing of the plaintiffs' intestates on April 11, 1922. The cases were tried together by jury, with verdicts for the plaintiffs.

The accident in question was caused by the giving way of the defendant's roadbed, on the shore of Lake Sunapee. There was a fill at this point, and surface water had collected in the ditch at its upper side, thereby either softening or washing out the fill. Up to the fall before the accident, the highway parallel with and above the defendant's right of way had diverted the surface water. Changes in the highway made at that time resulted in turning the water onto the defendant's premises. There was evidence that if the defendant ought to have anticipated the presence of the water in the ditch it should have taken precautions either by opening the lower end of the ditch, or building a culvert, or by patrolling the right of way.

The defendant's motions for nonsuits and for directed verdicts were denied by *Sawyer, J.,* subject to exceptions. There were also exceptions to instructions to the jury given and refused. Further facts are stated in the opinion.

*Doyle & Doyle, John B. Cavanaugh, Cyprien J. Belanger, Robert W. Upton, Nathaniel E. Martin* and *Joseph C. Donovan (Mr. Upton* orally), for the plaintiffs.

*Demond, Woodworth, Sulloway & Rogers* and *Warren, Howe & Wilson (Mr. Jonathan Piper* orally), for the defendant.

PEASLEE, C. J. I. The principal question in these cases is whether the defendant owed to its employees any duty in respect to the presence of surface water that came upon its premises shortly before the accident. The roadbed at this point is located at the foot of a considerable watershed, and, but for the artificial obstruction offered by an adjacent highway, water might be expected to come down as it did on the night in question. In the years preceding the accident, the highway had diverted the water, partly by a ditch at its upper side and partly by reason of the middle of the highway being low and acting as an added channel.

In the fall before the accident the highway had been rebuilt, under the direction of state engineers. The surface had been left rounded sufficiently to throw off water and a ditch had been constructed at the upper side, designed to conduct the surface water coming from the hills above. At about the place of the accident, a spur of the hill had been cut to widen the highway. In doing this, the bank had been left so steep that it would be evident to anyone familiar with such work that the earth and stones would fall under the effect of heavy rains or spring thawing and obstruct the ditch. In that event the water would flow over the road and onto the defendant's premises. An occurrence of this sort caused the weakening of the roadbed and the accident ensued. There was no evidence that the defendant knew that the changes in the highway would affect the flow of the surface water.

The question, what obligation the defendant was under to anticipate and provide against such an accident, involves the law governing the rights and duties of adjoining owners as to surface water which in a state of nature would run over the land of one onto that of the other. While in many jurisdictions the law has been declared to be that each owner has the absolute right to appropriate surface

water, or to stop its flow onto his land (27 R. C. L. 1138 *et seq.*), the rule in this jurisdiction is that the rights of the parties are governed by the doctrine of reasonable use. *Swett* v. *Cutts*, 50 N. H. 439; *Rindge* v. *Sargent*, 64 N. H. 294. The question raised is one of fact, even in a case where the claimed right consists of discharging water from a culvert onto the adjoining premises. *Franklin* v. *Durgee*, 71 N. H. 186.

Upon this motion for a directed verdict, it must be assumed that all material questions touching the rights and obligations of the town and the defendant as to this surface water were resolved in favor of the plaintiffs, so far as there is any evidence to justify such findings.

It appeared that the town's highway construction had taken care of the surface water for a long series of years, and it is urged that the defendant had a right to act upon the supposition that this protection would be continued. But no such conclusion can be drawn as matter of law. It may be that as a matter of fact it would or would not be unreasonable for the town to change that situation. It must be assumed here that it would not be, and that therefore the defendant cannot justify its conduct under a claim of right to a continuance of former conditions.

So also as to the new construction, it might be found that it was not an unreasonable one as far as the defendant was concerned. It could be found that even with the highway ditch obstructed no more water came onto the defendant's premises than would have come in a state of nature. The fact that the water came down over a space only a few feet wide does not appear to have had any significance in the causation of the trouble with the roadbed. So far as appears, the same result would have followed if the water had flowed down over the land in its natural state, or over a stretch of road that had ponded some of the water behind it. There is no conclusive evidence that the town turned any water into the railroad ditch, save what would have found its way there in the absence of a highway.

These facts could be found from the evidence, and being found would be used in ascertaining the remaining facts. In the further consideration of the case their existence as facts is assumed, except when otherwise stated.

If the water that came into the ditch alongside the track and caused the trouble was the surface water that would naturally have come there had there been no highway, the defendant might be found to be in fault in not providing protection against its effect.

If the town had abandoned the protective features of the old highway it would not necessarily follow that it violated any right of the defendant. The defendant had no absolute right to rest upon the assumption that such protection would be continued. It knew changes were being made in the highway, and was therefore put upon inquiry. Conceding that it might assume that the changes would be made in a lawful manner and with due care, the defendant would not be excused from an investigation of the new situation, because an abandonment of the protective feature of the old road could be found not to be in excess of the town's rights. *Flanders* v. *Franklin*, 70 N. H. 168. If it was not in excess of the town's rights, it was not an invasion of the defendant's rights. Not being an invasion of the defendant's rights, the defendant could not, as matter of law, rely upon the assumption that such course would not be pursued.

It is no answer for the defendant to say that it relied upon the competency of the state engineers and the faithfulness of the town workmen. If it could be found that a reasonable man might have assumed that the town would not change the essential features of the situation without notice to the defendant, and that therefore the defendant might reasonably rest upon that kind of assurance of safety, it is also true that it could well be found that a reasonable man, having a duty to protect the safety of the roadbed, would not indulge in that sort of reliance when he knew that the gratuitous protectors of his premises were making changes on their premises which might result in the abandonment of the protection.

But it is said that if the defendant could be held accountable for knowledge concerning the adequacy of the highway to take care of the surface water when running in its natural way, it had no duty to look out for the water after the town had collected it into a defined stream; that the town could not, as the possessor of an upper estate, lawfully turn such a stream upon a lower proprietor, and therefore the defendant had no duty to anticipate that such action might be taken. It may be that the town would not exceed its right if it turned the water onto the defendant's premises in a stream. The question is to be settled by the application of the doctrine of reasonable use. *Franklin* v. *Durgee*, 71 N. H. 186. But if it be assumed that what the town did invaded the defendant's rights by turning a stream upon the right of way, the issue here presented is not disposed of.

The question here is not one of duty to anticipate the wrong of another, but of reasonable assurance that right has been done, —

right, that is, as between the defendant and its servants, not merely as between the defendant and the town. It does not concern the defendant's supposed duty to know that a wrong has been committed against it, but rather its duty to be reasonably assured that right has been done as concerning its servants. If no harm could have come but for the intentional fault of the town, the ground suggested might be tenable. But when, as here, the defendant is depending upon action by the town in a positive way (*i. e.*, as warding off a danger that otherwise would be present), the defendant must take reasonable care to ascertain what that conduct is. *Elliott* v. *Douglas*, 80 N. H. 418. Relying upon the town for a partial performance of what was necessary to make the work place safe, the defendant is charged with some obligation in reference to what the town did.

The defendant depended upon the town to relieve the defendant of the care of the surface water. It was not freed from obligation to its servants because the town's method of performing that service was a partially efficient one. The construction adopted by the town is to be considered as a whole. So considered, the work was defective. It provided a dam, but no sufficient outlet for the accumulated water. The entire work is so intimately connected that the defendant might fairly be found chargeable with responsibility for knowledge of the whole situation. The town had not provided for the care of the water. An inspection of what it had done would have disclosed that fact.

The defendant can excuse itself from chargeability with knowledge of the situation only by showing that it reasonably believed that the surface water naturally flowing onto its premises had been adequately taken care of in some other way. It is not sufficient, as matter of law, for it to say that the new road constituted a small dam across the ravine. It might be found that a reasonable person would inquire further. The dam would not create sufficient pondage to hold the water. An adequate outlet, other than over the dam, was required. It is practically impossible to separate the whole dependent construction into independent parts and say that assurance that certain parts are sufficient is all that the defendant need consider. The dam was sufficient to turn the water if there was a sufficient outlet. Otherwise it was not sufficient for that purpose.

As before suggested, the question here is not of the defendant's rights as against the town, but of the defendant's performance of its nondelegable duty to care for its roadbed. In the performance of that duty, it trusted that the town would care for the surface

water. The suggestion is made that the defendant is chargeable with what the town did, upon the theory that the highway was so intimately connected with the railroad fill as to be a part of the work place. Where the line is to be drawn between the acts the master must be responsible for and those as to which he may rely upon others is not made entirely clear by the cases.

He cannot rely upon an independent contractor whom he hires to construct or maintain the work place, nor upon those who permit him to have a joint use of their premises. *Story* v. *Railroad,* 70 N. H. 364. But he may borrow an instrumentality, or buy it, and is without fault if he uses ordinary care to ascertain that it is fit for the intended use. *Little* v. *Company,* 69 N. H. 494.

The limitations of the master's responsibility are determined by the proper definition of the word furnishing. If one buys a tool or a building already fabricated, his purchase is his starting point. He is not liable for secret defects, if he uses due care in selection and inspection. But if he makes the tool or erects the building, either in person or by the hand of another, he is responsible for defects in the work resulting from negligent fabrication.

In order, however, to charge the master with the nondelegable duty, he must in some way furnish the thing complained of. This element is lacking in the present case. The highway and the land above the defendant's right of way belonged to third parties. The defendant had neither control over their acts, nor any agreement or permission touching the use of what was theirs. It did not call upon its servants to do any work connected therewith. It relied upon the conduct of such parties, upon their own premises, to continue an existing condition as between adjoining landowners. The situation is not an unusual one. In many lines of activity one has to shape his conduct and his methods of work in view of what has been or will be done by others with whom his business brings him into relation.

The wrong of which complaint is here made consists in the failure to do certain things upon the defendant's premises. The conduct of the town is alleged to have furnished an occasion demanding such acts. The duty to know that the occasion had been created by a third party is the ordinary one to use due care. The occasion was not something furnished by the defendant, but an outside circumstance, in view of which the defendant had a duty as to that which it furnished. It was a condition under which the work place was furnished, but it was not a part of the place. Duty to be reasonably

informed as to the situation and to act accordingly was nondelegable. Beyond that, the defendant is not chargeable with what the town did.

But although the defendant is not to be charged with the action of the town, it was bound to take reasonable care to ascertain whether the work had been performed. *Carpenter* v. *Company*, 80 N. H. 77. Its duty included all reasonable watchfulness for the continued safety of the work place. "Lack of care to guard against a danger which renders the work-place unsafe, of which the master knows or ought to have known in season to prevent the injury, is a breach of that obligation, without reference to the manner in which the danger was created." *Leazotte* v. *Company*, 74 N. H. 480, 481.

The argument that one may stand upon a strict legal right and not concern himself with what his neighbor does may have much force in a case not involving the rights of others. But when, as in this case, a duty owed to a third party by the party offended against is involved, it is not so convincing. *Story* v. *Railroad*, 70 N. H. 364; *Pittsfield &c. Company* v. *Company*, 71 N. H. 522; *Elliott* v. *Douglas*, 80 N. H. 418.

The issue is not whether the town could lawfully turn a defined stream upon the defendant's premises, but whether adequate provision had been made to turn elsewhere water that might lawfully come upon those premises. The fact that the provision made will result in turning the water onto the defendant's premises unlawfully is not an equivalent for a provision for keeping it off his premises. It is the latter state of facts only that the defendant could rely upon, as matter of law. It was the duty of the defendant to reasonably care for the natural run of surface water. If it could delegate this duty to another, it did not do so in the present case. It merely assumed that the party controlling the adjacent premises would continue its gratuitous and unpromised conduct which had theretofore kept the water off. If it could rely upon the continuance of such a gratuity when it consisted of passive conduct, such reliance could not, as matter of law, continue after the defendant knew that changes were being made. From that time, the defendant's reliance would not necessarily extend beyond the facts as the situation would have disclosed them to one making reasonable inquiry.

The situation presented plain issues of fact. The defendant was bound to know that the town might exercise its right to take reasonable action in reference to getting rid of the surface water. Abandonment of the old protective features of the highway could be found

to be reasonable. It was the defendant's duty to make reasonable investigation of the changes that were evidently being made to ascertain whether the town was exercising that right of abandonment. It was equally bound to inquire whether the changes made evidently amounted to an unintended abandonment of that protection, because of faulty construction. The question is not what the town meant to do, but what it did. There is no evidence that the defendant relied upon any information as to what the town intended to do, or upon any assurance that the town had undertaken to provide for the care of the surface water by the new construction. It is therefore unnecessary to consider whether such reliance would excuse the defendant.

Changes had been made. The middle of the road was no longer available as a waterway and the old ditch at the upper side of the road had been supplanted by the new one, closer under the spur of the hill. The old protections against incursions of surface water were gone, and the defendant could no longer depend upon them. The next inquiry that it might be found that a reasonable man would make would be as to what, if anything, there was to take the place of the abandoned channels. He could no more shut his eyes to this feature of the situation than to the other. The problem was one to be dealt with by engineers, and the defendant was bound to view the situation from an engineer's standpoint. So considered, it would inform the defendant that there was no sufficient provision for caring for the surface water.

Knowing the configuration of the land, and that the public authorities were making extensive changes in the highway, the defendant was bound to make such inquiry as reason demanded as to whether adequate provision for the care of the surface water had been made. It could be found that reasonable inspection would have disclosed that such provision had not been made, and that in view of the situation the defendant should have taken some of the precautions suggested by the issues submitted to the jury. It could have made an outlet for the water by clearing the lower end of the ditch, or by building a culvert, or, failing of these, it could have maintained inspection which would be adequate in view of the dangers of the situation.

Laying aside the general duty to care for surface water, and the special rules governing that subject, and approaching the issue from a different standpoint, the case is much like *Ela* v. *Company,* 71 N. H. 1. The question there was one of maintenance duty owed to

the traveling public, in view of what might occur upon neighboring premises. The neighbor's act there involved was felling a tree against the defendant's suspended wires. The jury were instructed that due care did not require that the defendant should anticipate such an act. The charge was erroneous, since the defendant was bound to anticipate chance happenings of this character (short of wilful acts) as far as a reasonable man would. There was a maintenance duty commensurate with such anticipation; and the facts that the trees were of suitable size to cut, and that they might be forced against the wires by the wind or by other natural causes, were held to be proper matters to be submitted to the jury upon this issue.

So here, the facts that the watercourses down the highway might be obstructed from various causes, that a chance gully across the highway might turn the water, and that, as the defendant's division engineer testified, it was impossible to tell where the water would go in the spring of the year, were of sufficient significance to invoke the judgment of the jury upon the question of reasonable anticipation. In each case there were potential sources of danger, and in each the defendant's duty to third parties required it to use reasonable care to avert the danger.

If there was sufficient occasion for anticipation, and for the adoption of precautionary measures, a failure to take the precautions reasonably required establishes the defendant's fault. Conceding that the town was negligent, that its negligence was causal and that the defendant was under no duty to anticipate it, the defendant's freedom from liability is not established. "The fact of negligent intervention which is an essential part of causation does not necessarily exonerate a defendant who was bound to anticipate and provide against some intervention which might have caused similar results." *Derosier* v. *Company*, 81 N. H. 451, 461. The subject is there considered in detail, and does not require further elaboration.

There was a situation which might be found to call for protective action. It was for the jury to take into consideration, not only the landowners' rights and obligations as to the care of surface water, but also the other chances that the water might escape, and in view of all these circumstances to determine whether a reasonable man would have taken some measures to protect the embankment from an accumulation of water behind it.

In one aspect of the matter the duty thus imposed seems an onerous one. But when it is considered in the light of the consequences

which may follow if it is not performed, it is apparent that it does not impose an unreasonable burden. The lives of both employees and passengers are staked upon faith in the safety of the roadbed. Under such circumstances ordinary care may and should include a very high degree of diligence.

The motions for nonsuits and directed verdicts were properly denied.

II. The plaintiffs excepted to the withdrawal from consideration by the jury of the alleged insufficiency of the roadbed. There was evidence that the fill was not constructed of proper material to withstand the effect of water accumulated in the ditch. It had proved sufficient for use for a long period, some fifty years, but apparently it had never been put to such a test as on the night in question. It is manifest that this feature of the situation was to be considered together with all the others. More care might well be required to provide for keeping an accumulation of water away from such a fill than from one constructed of more stable material. It does not seem to be important whether the fault is called using a fill composed of improper material or failing to keep water away from an unstable fill. The fault charged against the defendant consisted in the combination of conditions, and the whole situation was to be considered by the jury in the determination of that issue.

The fact that the fill was made by another railroad, whose completed roadbed the defendant took over in 1890, does not necessarily excuse the defendant from responsibility for the nature of the fill. There was evidence that its character was open to observation, and it would at least be a question of fact whether a reasonable man would have made an inspection.

The plaintiff's claim that the defendant is chargeable as though it had constructed the fill cannot be sustained. The duty was to use reasonable care to furnish a safe work place. It stands no differently than furnishing tools and appliances. The completed appliance being acquired from another, upon whose skill and judgment the master reasonably relied, the master is not liable for defects not discoverable by reasonable inspection. *Little* v. *Company*, 69 N. H. 494; *Reynolds* v. *Woolen Co.*, 168 Mass. 501.

III. In the instructions given to the jury, no specific reference was made to the rights and duties of the town and the defendant as to the care of the surface water. There was a general charge as to the defendant's duty to use reasonable care under all the circumstances of the case, and certain specific claims of fault, before stated,

were submitted as those upon which a verdict might be based. It is evident that, instructions as to the matter of surface water would have been required if requested. *Simoneau* v. *Railroad*, 78 N. H. 363.

The requests which were denied, subject to exception, included the following:

"6. There is no evidence from which you can find that there was any breach of duty owed by the defendant to the plaintiff's intestate with respect to the presence or effect of water which had come onto its right of way from the highway.

7. (Requested if 6 is refused). There is no evidence from which you can find that the defendant should have anticipated that water in quantity to injuriously affect its roadbed would come from the highway.

7 (a) (If 6 is refused). If you find that the defendant did all that a reasonable man would do in the exercise of ordinary care to discover the presence of a dangerous situation on its right of way your verdict should be for the defendant."

The last instruction, read in the light of the others in connection with which it was requested, fairly calls for a charge upon the matter of the defendant's duty in the ascertainment of what the general situation was. The question was one the defendant was entitled to have considered. It is not clearly presented by the charge. While the rule of due care under all the circumstances includes all details, as a matter of technical law, yet it is evident that it might not be sufficient to give the jury a fair understanding of what they should consider. They may have thought, for example, that the defendant was under an absolute duty to know the situation upon the highway, or that the town had an absolute right to turn water onto the right of way at pleasure. As it is "probable that justice may not have been done," the verdicts must be set aside. *Hanson* v. *Railway*, 73 N. H. 395; *West* v. *Railroad*, 81 N. H. 522.

*New trials.*

All concurred.

ON REHEARING. After the foregoing opinion was filed both parties moved for a rehearing.

*Robert W. Upton, Nathaniel E. Martin, A. W. Levansaler, Doyle & Doyle, Cyprien J. Belanger, Joseph C. Donovan* and *John B. Cavanaugh*, for the plaintiffs.

*Demond, Woodworth, Sulloway & Rogers* and *Warren, Howe & Wilson,* for the defendant.

Peaslee, C. J.　I.　The plaintiffs' motion is based upon the proposition that it has not been the practice to set aside a verdict when requested instructions, which were refused, were not correct statements of the law, and the exception was to the refusal only.　The soundness of this statement of the law is self-evident.　These cases present other questions.

The defendant requested instructions as to the law governing the rights and duties of adjoining landowners as to surface water.　The requests were variously framed, and it may be assumed that none of them contained a full and correct statement of the law.　Some of them were defective only in that a further element should have been added.

The general subject thus brought to the attention of the court was material to the decision of the cases.　No instructions whatever were given concerning it.

It has always been understood here that the duty to fully and correctly instruct the jury as to the law applicable to the case rests upon the court.　The presiding justice should, of his own motion, give a proper charge.　*Maxwell* v. *Company,* 206 Mass. 197; *Donahue* v. *Company,* 56 Vt. 374.　"The presumption is that such instructions as were proper were given."　*Hill* v. *Carr,* 78 N. H. 458, 461.　"It is the duty of the court to instruct the jury upon the law."　*Mitchell* v. *Railroad,* 68 N. H. 96, 117.　To the same effect are, *Nutter* v. *Pearl,* 71 N. H. 247; *Leavitt* v. *Company,* 72 N. H. 290; *Haskell* v. *Railway,* 73 N. H. 587; *Trafton* v. *Osgood,* 74 N. H. 98.

But the reciprocal duty of counsel (*Gardner* v. *Company,* 79 N. H. 452, 457, and cases cited) requires that he call the attention of the court to omissions from the charge in season for the correction of the error.　He may not lie by and rely upon a general exception to the charge as given to raise a question relating to a failure to charge. *Edgerly* v. *Railroad,* 67 N. H. 312, 317, and cases cited; *Emery* v. *Railroad,* 67 N. H. 434; *Pitman* v. *Merriman,* 80 N. H. 295, 299, and cases cited.　When, however, this duty of counsel has been performed, and the matter is thus brought to the attention of the presiding justice, an exception lies if there is a failure to charge. *Tuttle* v. *Dodge,* 80 N. H. 304, 316, and cases cited.

Whether preferring specific requests to charge upon a subject is a sufficient presentation of the matter to the presiding justice,

regardless of errors in the proffered instructions, and whether an exception to the denial of the requests raises the issue of failure to charge at all, are new questions in this jurisdiction.

Cases are to be found asserting that such an exception is unavailing, but they are largely from jurisdictions where the rule is that it is the primary duty of counsel to furnish the instructions desired, and where the court does not charge at all, except in the language supplied by requests. 1 Black, Inst. Juries, 356. It is evident that such precedents are of no value here.

The precise questions here presented arose in a Massachusetts case, and it was held that the exception was well taken. The issue involved the defence of advice of counsel in a suit for malicious prosecution. "Of course, to make the advice of counsel a defence, the person consulting him must act in good faith, and he must make a full and honest disclosure of all the material facts within his knowledge and belief. If the judge had added these elements to the request, the defendant would have had no ground of exception, but it seems to us that it would be too narrow and technical a view to hold that this exception must be overruled because these elements were not added. The attention of the judge was called to the substantive defence of advice of counsel, and he should have given appropriate instructions upon the subject." *Black* v. *Buckingham*, 174 Mass. 102, 107.

The foregoing decision carries out the spirit of our rule concerning the duties of court and counsel. While those duties are reciprocal, the ultimate duty to state the law fully and correctly rests upon the court. The duty of counsel is to present the matter so that there may be no oversight. Having done this, and having excepted as in this case, he fairly raises the question of the propriety of a refusal to instruct at all.

There is nothing in the cases cited by counsel tending to contradict this theory. In our cases holding that an exception to a refusal to give a requested and incorrect instruction must be overruled (*Ordway* v. *Sanders*, 58 N. H. 132; *Leavitt* v. *Fletcher*, 60 N. H. 182; *Smith* v. *Bank*, 72 N. H. 4; *Lockwood* v. *Company*, 76 N. H. 530; *Jones* v. *Stone*, 78 N. H. 504; *Williams* v. *Railroad*, *ante*, 253) the judges gave other instructions upon the subject, or it does not appear that they did not do so. That is, it does not appear in any of them that the judge failed to perform the duty whereto he was moved. He instructed upon the subject presented. The exceptions were overruled because the moving party's requests were erroneous and

his presentation of the subject was not ignored by the court. If he desires to question the correctness of instructions given under such circumstances, he should except thereto, as in the case of instructions given entirely on the court's initiative.

II. The defendant's motion presents no questions that were not examined before the former opinion was announced. There was positive evidence from the witness Hancox that the water would have come down substantially where and as it did, if there had been no highway.

The argument against the rules here established touching the care of surface water and the duty to anticipate dangers to third persons to whom the defendant owed a duty to use care, does not convince us that either of those rules should be abandoned or modified.

*Former result affirmed.*

All concurred.