Rockingham,
June 1, 1937.

ADELLA SMITH, *by her father and next friend* v. HADDON H. HOOPER.

*Jeremy R. Waldron, Edgar A. Blanchard* and *Wyman P. Boynton* (*Mr. Waldron* orally), for the plaintiff.

*Arthur E. Sewall* and *Thomas L. Cleaton* (both orally), for the defendant.

ALLEN, C. J.   Upon the exceptions to the denial of his motions for a nonsuit and a directed verdict the defendant admits his duty of care but denies any force of the evidence to show its breach.   The breach alleged is his failure to use care in enforcing his rule that the riders should not carry whips.

A spectator at the show testified to seeing "some of the riders" in the ring with whips.   The plaintiff and the boy who struck her horse each had one, according to her testimony.   The defendant's personal assignment was to "look out for the horses and the riders" and in the ring during the contest was his ringmaster.   The plaintiff testified that she had no instruction not to carry a whip, and the testimony of another rider was that her knowledge of the rule came from an outside source.   With allowance for the jury's province whether or not to accept the evidence of the care taken to see that no rider entered the ring with a whip, it was a reasonably deducible conclusion from all the evidence that the duty of care in enforcing the rule against carrying whips was not observed.

Furthermore, it appears that the complete record of the trial is not transferred.   The omission relates to certain evidence of the inspection of the riders as they entered the ring.   The defendant and a servant of his inspected.   Whether they stood side by side or on opposite sides of the entrance, was testified to, but in such a manner that the record does not show what the testimony as to their positions was.   If the defendant desired to protect his rights and have the testimony duly preserved for further proceedings in the case, he might readily have done so.   He may hardly complain of misfortune. While it is not to be assumed that the testimony was favorable to the plaintiff, the defendant, not showing what the testimony was, is in no position to claim that evidence sufficient to entitle the plaintiff to a finding on the point in issue was not introduced.

If it be assumed that the boy who struck the plaintiff's horse was told by the defendant not to carry a whip, it is proper to infer that care to see that the instruction was obeyed was not taken.   It is not conjectural to say that ordinary attention would have brought to

notice his possession of a whip. The defendant testified that he and one of his servants watched the riders in entering the ring, as has been said, and it was the ringmaster's duty to see that the game was played under the rules. It might be reasonably found that the ringmaster if duly watchful would have seen that the boy had a whip. There is no evidence that he kept it concealed, and a plaintiff is not required to disprove mere possibilities of defence. Taking into account their common knowledge about such a matter, the jury might find that concealment was too difficult to make it probable. And they might conclude that carrying a whip indicated a purpose to use it and use being necessarily observable, concealment until use was less probable than open possession. And the fact that other riders were observed to carry whips has some tendency to show that the boy's whip was open to observation. Neglect to enforce the rule would be a reason for his open disregard of it.

The motions for a nonsuit and a directed verdict were rightly denied.

The court denied a request for an instruction that if "the Swenson boy" had no whip and did not strike the plaintiff's horse,·a defendant's verdict was to be returned.

As the instruction is construed, the Swenson boy was referred to as the rider charged by the plaintiff with attacking her. In her direct examination she identified him in a fairly positive way. She had been told about him the day before the show; before her fall he had been "chasing" her in the effort to break her balloon; she was on the watch for him when he drew up to her side and struck at her horse; and she saw him one other time. In her identification of him she selected him from one or two other boys. Court and opposing counsel were evidently given to understand that he was the one claimed to be the active agency through whom the defendant's negligence became effective.

He testified in denial of carrying a whip or of striking except with his hand. The issue was thus squarely raised whether the plaintiff's horse was struck with a whip, or otherwise than with the hand. No suggestion was made during the trial, so far as the record shows, that it may have been some other boy. Opposing counsel would naturally assume that it was the Swenson boy, if anyone, who it was claimed had used a whip, and the court should have so understood in its consideration of the request. "The Swenson boy," in the light of the plaintiff's evidence and of the course and conduct of the trial, meant the boy who she claimed beat her horse. She designated him as the one

who made her horse rear, and the defendant in his request followed and acted upon the designation.

The issue involved in the request was not what boy struck the horse but whether any boy struck it. It is thought that the request was fairly framed to give this understanding of its meaning. It was a direct and important issue, clearly and definitely raised. Liability depended upon it, while it was a matter of indifference which boy was involved unless in a minor respect. If the horse was not struck in the manner the plaintiff claims, she was not hurt as the result of the defendant's neglect to enforce his rule against having whips, and he is not liable.

Moreover, the request being proper unless in naming the boy, the subject of the issue to which it related was brought to the court's attention and an appropriate instruction should have been given. The charge was general on the issue of causation. The jury were only told that if the defendant's negligence "caused or contributed to cause the accident," he was liable. Unless the horse was struck as the plaintiff claimed, causation was not proved. This became a decisive corollary to the broad statement of the need of causation, and the defendant was entitled to have the jury directed to make it the specific test thereof.

It " 'would be too narrow and technical a view to hold that this exception must be overruled' " (*Burke* v. *Railroad*, 82 N. H. 350, 362) because an incorrect element of minor consequence was added. Slight flaws do not destroy the general integrity of a request. The court's duty in this respect is undoubted. *Simoneau* v. *Railway*, 78 N. H. 363, 365; *Burke* v. *Railroad, supra; McCarthy* v. *Souther*, 83 N. H. 29, 34; *Colby* v. *Lee*, 83 N. H. 303, 307, 310; *Smith* v. *Company*, 83 N. H. 439, 450; *McQuaid* v. *Michou*, 85 N. H. 299, 305; *Morrison* v. *Railroad*, 86 N. H. 176, 183; *Peppin* v. *Railroad*, 86 N. H. 395, 401. The exception to the denial of the request is sustained.

The other exceptions are thought to present issues not likely to arise at a new trial and are therefore unconsidered, except that it may be said, with reference to a point in argument, that it is a matter of common knowledge, which may be used in argument (*Beliveau* v. *Company*, 81 N. H. 57, 59), that horses rear against the force of gravity and, rearing, are apt to fall by the same force.

*New trial.*

BRANCH and WOODBURY, JJ., were absent; the others concurred.