Hillsborough, } No. 3062.
May 2, 1939. }

JOHN STANLEY *v.* ISABELLE J. KELLEY.

SOPHIE STANLEY *v.* SAME.

GEORGE K. KITTLE *v.* SAME.

SARAH M. KITTLE v. SAME.

ISABELLE D. EASLAND *v.* SAME.

HELEN BARNFATHER *v.* SAME.

*Hughes & Burns, Charles F. Hartnett* and *John J. Sheehan* (*Mr. Hartnett* orally), for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wadleigh* orally), for the defendant.

*Hughes & Burns* and *Charles F. Hartnett* (*Mr. Hartnett* orally), for the United States Fidelity & Guaranty Company.

MARBLE, J. The defendant's evidence tended to prove the following facts. The defendant, driving east on Harrison Street, entered the intersection at a speed of not more than twelve miles an hour. See Laws 1927, *c.* 76, *s.* 2. Before attempting to cross Beech Street she looked first to her right and then to her left and saw no car coming in either direction. A car was parked on the west side of Beech Street about sixty feet north of the intersection. As the defendant started to cross she saw the Easland car passing this parked car and coming toward her from her left. She applied the brakes of her car at once, turned to the right, and came to a "dead stop". Her car was then two or three feet west of the street-car tracks, which occupied the center of Beech Street.

Easland was driving at a high rate of speed. His car, after striking the defendant's car, ran for a distance of a hundred feet or more and then "turned over on its top with its wheels in the air."

In the light of this evidence the plaintiffs' contention that the defendant is liable as a matter of law cannot be seriously entertained. The exceptions to the denial of the plaintiffs' motions for directed verdicts are accordingly overruled.

Reginald E. Marston, a motorman, testified that he was operating

a trolley car on the Beech Street line at the time of the accident and that as he approached Harrison Street from the north he heard a crash and saw a commotion; that he left his car about twenty or twenty-five feet north of the parked automobile referred to in the defendant's testimony and went down to the scene of the accident. It was the plaintiff's contention at the trial that no car was parked on the west side of Beech Street to interfere with the defendant's view. Certain photographs taken immediately after the accident were introduced through Easland by his counsel and marked as Easland's exhibits. Several of these photographs were taken at the intersection looking south and showed the Easland car at the side of the road completely overturned. Two of them disclosed a trolley car south of the Easland car. The street car line comprised a single track.

In the course of his argument to the jury counsel for the plaintiffs said: "Now when you go into your jury room you will have with you some photographs which were taken immediately after the accident, and I want to call your attention to two of them in particular. . . . You will see Mr. Easland's car, . . . headed north. . . . There's Mr. Marston in the right-hand corner, and there's his street-car on the main-line track south of the Easland car and headed northerly, an absolutely flat contradiction of that very valuable testimony offered by my distinguished Brother Wyman, and the photographs we have introduced absolutely contradict Mr. Marston in every single word that he testified to on that witness stand."

Answering this argument, defendant's counsel said: "My brother can laugh all he wants at Marston and his location of cars . . . . You know very well that this wasn't the car that Marston was operating . . . . Are you gentlemen going to believe that this photograph detracts from Mr. Marston's testimony? You think it over. This is one of the exhibits that was offered on behalf of the passengers, and I ask you to note that they didn't bring in the man who took the pictures. They selected their pictures among those that had been taken and showed you only pictures that had been taken looking south."

Exceptions were taken as follows:

"*Mr. Burns:* We desire to reserve an objection and exception to the argument as being unsupported by the evidence.

"*Mr. Wyman:* I didn't mean to infer that they had selected them from a larger number.

"*Mr. Burns:* That's what you said.

"*The Court:* I think you had better withdraw that about selecting photographs.

"*Mr. Wyman:* I'm going to say almost the same thing again, but I'll withdraw the selecting process.

"*Mr. Burns:* In view of the withdrawal and the explanation, I still reserve my exception.

"*The Court:* You've already done that."

Defendant's counsel then continued: "I am not meaning to argue anything except what is properly inferable from the evidence. They bring in some pictures. There is no evidence in the case that these are all the pictures that were taken on the day of the accident by this man whose name Mr. Easland didn't seem exactly to know . . . There's no evidence that he didn't take some more. I submit to you that it is strange that the man who took the pictures shouldn't take any pictures looking in the opposite direction, strange that he didn't take any pictures looking north, strange that he didn't take any pictures showing how the marks went up the road, and if they wanted to avoid that inference that I am asking you to draw, I am saying that they could have brought that man here to testify as to how many pictures he did in fact take. I'm not saying that they have more pictures or that they haven't. I am saying it is a fair inference from the fact that they didn't bring in the man who took them and put him on the stand and say whether there were other pictures or not, and I'm not withdrawing that."

In making this argument counsel was virtually asking the jury to infer that the plaintiffs, while charging Marston with falsehood, had in their possession the proof of his veracity. There were photographs (one of them taken from Harrison Street looking east) which disclosed pools of oil and wheel tracks made by the two cars at the time of the collision. The accident happened at the intersection and the cars themselves were south of that point. It is evident from these photographs that a view farther to the north would not have revealed any tire marks indicating the course of Easland's car, and the importance of showing the presence or absence of Marston's trolley car north of the intersection was not apparent at the time the photographs were taken. Nor does it appear that the photographs were taken at the plaintiffs' request. They were Easland's exhibits.

Under these circumstances defendant's counsel was not warranted in asking the jury to draw an inference unfavorable to the plaintiffs because the photographer was not called to testify.

It is true that defendant's counsel ostensibly withdrew his remark concerning the selection of the photographs, but he prefaced the withdrawal with the statement that he was going to say almost the same thing again and then, in disregard of the court's warning, proceeded to make precisely the same charge by insinuation. The allowance of the argument constituted reversible error.

The defendant introduced evidence to the effect that the same attorneys who represented the plaintiffs at the trial represented both the plaintiffs and Easland before the trial. The plaintiffs requested the court to instruct the jury as follows: "The fact that attorneys Hughes & Burns, or Mr. Burns, appeared as counsel for Mr. Easland when the suit was first instituted in his behalf and later withdrew, is not to be considered by you in any way as favorable or prejudicial to any of the parties involved in this litigation." This request was denied and the plaintiffs excepted.

Attorneys for the defendant argue that the fact that the same counsel represented both Easland and his passengers warranted the conclusion that "Mr. Easland through his counsel had the plaintiff passengers, in ignorance of their legal rights, sue only Mrs. Kelley when if they had had independent advice from some other attorneys than Mr. Easland's they would have brought suit against Mr. Easland alone." Even if this inference could properly be drawn and was material in the cross actions, the instruction as applied to the plaintiffs should have been given. *Morrison* v. *Railroad,* 86 N. H. 176, 183; *Burke* v. *Railroad,* 82 N. H. 350, 361. The evidence had no tendency to prove that the plaintiffs were not acting in good faith or that the defendant was free from fault.

Various other exceptions were taken by the plaintiffs, but inasmuch as the questions involved may not arise at another trial they have not been considered.

The Presiding Justice erred in granting the defendant's motion to require Easland and his insurer to take over the defence of these actions. Although an alleged indemnitor who has been notified to appear and defend an action may be bound by the judgment rendered against the alleged indemnitee (Hening, N. H. Dig. 877), he is not, apart from express contract, obliged to conduct the defence of the action.

No indemnity obligation can here arise by operation of law in the absence of an adjudication in the plaintiffs' cases that the defendant was at fault. Indemnity imports reimbursement. *Batchelder* v. *Wendell,* 36 N. H. 204, 217. If the plaintiffs should fail to recover

in the new trials, Easland would be under no duty to reimburse the defendant because she would not have suffered any loss.

It follows that until verdicts have been rendered in the new trials no occasion exists for considering the questions which counsel have discussed. The exception to the granting of the motion is sustained.

*New trials.*

All concurred.