Hillsborough, } No. 3203.
Feb. 4, 1941. }

THERESA B. STOWE, *Adm'x v.* RAYMOND HARTFORD.

HAROLD D. FOSS, *Adm'r v.* SAME.

*Devine & Tobin* (*Mr. Tobin* orally), for the plaintiff Stowe.

*Sheehan & Phinney* (*Mr. Phinney* orally), for the plaintiff Foss.

*McLane, Davis & Carleton* (*Mr. Carleton* orally), for the defendant.

MARBLE, J.   Both the decedents were employed on a public works project east of Lake Massabesic in the town of Auburn.   On the morning of the accident the truck in which they were riding with other laborers to their work broke down.   They then proceeded to walk easterly toward the location of the project, keeping on the right-hand side of the highway, which was the main cement thoroughfare between Manchester and Portsmouth.   The mercury registered twenty-two degrees below zero, and both men wore earlaps.   They were walking at the rear of the line of laborers numbering about thirty.

The defendant was driving eastward toward Epping.   The windshield of his truck had become coated with ice and he could see only through the space cleared by the mechanical wiper, which he stopped using when he reached a point about two or three miles west of the scene of the accident.   There was no wiper attached to the right-hand section of the windshield.   Hence his view near at hand and to the right was exceedingly restricted.

As he rounded the curve near Lewis' Corner, so called, he saw at a distance of three or four hundred feet to the east "a great number" of men "walking in the right-hand lane" and "scattered along some distance."   Because of the frosted windshield he "couldn't see anybody that happened to be fifty or seventy-five feet away" on his right.   He stated that he thought he saw all the men, but there is nothing to indicate a reasonable belief on his part that the scattered line did not extend westward to the point of invisibility.

He did not at any time after observing the scattered line sound his horn or diminish his speed of twenty or twenty-five miles an hour.   He testified that as he turned to the left for the purpose of passing the men ahead of him he "felt some bumps;" that he drove on for about a hundred feet and then stopped and got out of the truck, and that he started to go back to the scene of the accident but was prevented from doing so by some of the workmen.   Later he learned that he had struck three men—Stowe, Foss, and a man named Woodbury.

The plaintiffs argue that the defendant's heedless inattention to the dangers of the situation constituted negligence as a matter of law.   Acceptance of this view, however, would not entitle the plaintiffs to directed verdicts, since the issue of the decedents' contributory negligence was clearly for the jury.   *Murphy* v. *Granz, ante* 244.   The

case of *Prescott* v. *Yurchus*, 86 N. H. 108, and the other cases there considered are not in point. The plaintiffs in those actions were all occupants of the defendant Yurchus' car, and no question of their contributory fault was raised. 428 Briefs & Cases, 3.

Evidence that the decedents knew that automobile radiators were steaming that morning and that windshields were likely to become frosted was admissible on the issue of contributory negligence. The decedents realized of course that pedestrians could not be so readily seen through an icy windshield, and their conduct was to be judged in the light of that realization.

On the issue of contributory negligence the Presiding Justice instructed the jury as follows:

"A plaintiff cannot recover whose intestate was guilty of contributory negligence. Accordingly, consider whether Harvey E. Stowe or George E. Foss failed to exercise due or reasonable care for his own safety. Consider where they were in the highway; the attention they gave to traffic from the rear, and all other details of their conduct.

"In considering the contributory negligence of the plaintiffs' intestates and each of them, you may take into account that the defendant had, not his own locomotion to control, but that of the truck he was then operating.

"The plaintiffs' intestates owed a duty to use reasonable care for their own safety, and if you find the plaintiffs' intestates did not use such care and that such lack of care caused or contributed to cause the accident, then I charge you as a matter of law that neither of the plaintiffs can recover."

The plaintiffs requested the court to instruct the jury that a pedestrian "is entitled to make any reasonable use of any part of the highway" and that there is "no rule of law that requires any person to walk facing traffic." These requests were denied subject to exception.

One of the workmen engaged on the public works project testified: "We were supposed to walk on the left side; I knew that before we were working for the WPA; I knew that for a long time. . . . We know that; we ain't supposed when we get out, we ain't supposed to walk on the left—to walk on the left of the road, not supposed to walk on the right; you are supposed to walk on the left."

Although the plaintiffs' motion to strike this testimony from the record was granted, defendant's counsel referred to it in his argument to the jury. That part of the argument relating to the decedent's duty to walk facing traffic was as follows:

"When you are talking about contributory negligence, gentlemen, I know it doesn't appeal very much in death cases; you gentlemen are no different than the rest of us. But it is true, it is a fact, it is law, and it is common sense, that if a person is going to walk in our highways, they owe some duty—as the young man who was all confused on the witness stand made some remark that he didn't know about a WPA rule—that there was a rule, but he had it in his head for a long time. It is a rule of common sense, gentlemen, when you are bundled up, so you cannot hear, and your eyes are in front of your head, and they are not turned around and looking backward, it is common sense, that you walk facing traffic, so you can see what is coming on to you, rather than get out into a through highway, and not take care as to what is coming from behind. Gentlemen, that is true in this case."

In the case of *McCarthy* v. *Souther*, 83 N. H. 29, 34, it is said: "Proper requests for specific instructions which are applicable to the evidence should be granted in some form of language unless the instructions are obviously to be implied from the rest of the charge, and whether general instructions cover them must in some measure be determined by the circumstances and situation of the particular case." See *Nickerson* v. *Bentley*, 89 N. H. 533.

The argument of defendant's counsel was a circumstance in the present case which made the above-quoted requests peculiarly pertinent, and in view of that argument we believe that the plaintiffs were entitled to have the jury definitely informed that there is no specific legal prohibition against walking on the right-hand side of the road, and that a pedestrian is entitled to walk in any part of the highway he chooses if he does so with due regard for the rights of other travelers and exercises reasonable care for his own safety. *Murphy* v. *Granz*, *ante* 244.

The fact that the first of the requests does not state the law with meticulous accuracy is unimportant. "Slight flaws do not destroy the general integrity of a request" which brings to the attention of the court a subject on which instruction is fairly required. *Smith* v. *Hooper*, 89 N. H. 36, 39, and cases cited.

The remaining exceptions have not been considered, since the questions thereby presented may not hereafter be raised. The verdicts are set aside.

*New trials.*

All concurred.