324

Rockingham
No. 2012-406

JOANNE GRAY & a.

v.

LEISURE LIFE INDUSTRIES a/k/a LEISURE LIFE INDUSTRIES, INC. a/k/a
LEISURE LIFE INDUSTRIES, LLC & a.

Argued: February 13, 2013
Opinion Issued: October 1, 2013

*The Stein Law Firm, PLLC,* of Concord (*Robert A. Stein & a.* on the brief, and *Mr. Stein* orally), for the plaintiffs.

*Hoefle, Phoenix, Gormley & Roberts, P.A.,* of Portsmouth (*Lawrence B. Gormley* on the brief and orally), and *Hawkins Parnell Thackston & Young LLP,* of Atlanta, Georgia (*Michael J. Goldman* on the brief), for the defendants.

BASSETT, J. The defendants, Leisure Life Industries a/k/a Leisure Life Industries, Inc. a/k/a Leisure Life Industries, LLC (Leisure Life) and Knothe Apparel Group, Inc. (Knothe) (collectively, the defendants), appeal an order of the Superior Court (*McHugh,* J.) denying their motion for summary judgment and granting the cross-motion for entry of final judgment on the issue of indemnity filed by the plaintiffs, JoAnne Gray, Jeffrey Gray, Jeffrey J. Gray, and Jonathan Gray. The defendants also appeal the trial court's order denying their motion for summary judgment on successor liability. We reverse the trial court's denial of summary judgment with respect to the plaintiffs' indemnity claim.

The trial court found, or the record supports, the following facts. On or about December 3, 1996, Jeffrey Gray purchased a robe from The Orvis Company (Orvis) for his wife, JoAnne Gray. Orvis had purchased the robe from the manufacturer, Leisure Life. On January 9, 2005, Mrs. Gray was wearing the robe when she added a piece of firewood to her wood stove and the robe caught fire. As result, she was severely burned and suffered extensive injuries.

In the fall of 2007, the plaintiffs sued the defendants and Orvis along with other parties involved either in the design and distribution of the robe or the manufacture and sale of the wood stove. With respect to the defendants, the plaintiffs asserted numerous claims in connection with the robe, including counts sounding in negligence and strict liability. As to Orvis, the plaintiffs asserted claims of direct liability as well as a strict liability claim premised upon the liability of the defendants.

In 2008, Leisure Life moved for summary judgment against the plaintiffs, asserting that Leisure Life was purchased by Knothe in 2004 and was a division of Knothe at the time Mrs. Gray sustained her injuries. Leisure Life argued that it was not liable for the plaintiffs' injuries because it was no longer the same entity that manufactured the robe, and the circumstances of the purchase did not support holding Knothe liable as a successor. The trial court denied the motion.

In 2009, Orvis successfully moved to add third-party claims against the defendants for indemnification and contribution. Orvis claimed that it "had no involvement in the design and manufacturing of the robe" and that it "was simply a 'pass-through' entity." As a result, Orvis sought indemnity or contribution from the defendants for any damages it ultimately owed to the plaintiffs, including the amount of any judgment against, or settlement by, Orvis. In addition, Orvis asserted that it was entitled to recover the costs and attorney's fees that it had incurred in defending against the claims asserted by the plaintiffs. In January 2010, Orvis sent a letter to the defendants asserting that it was entitled to indemnification and, therefore, that the defendants should "assume the indemnity and defense of Orvis." Although the defendants participated in settlement discussions, they did not offer to indemnify or defend Orvis.

On September 13, 2010, immediately prior to the scheduled start of the trial, all parties except Leisure Life settled with the plaintiffs. The parties involved in the sale and manufacture of the wood stove settled the claims against them for five million dollars. Orvis settled the claims against it for one million dollars and assigned to the plaintiffs "any and all rights to indemnity" that Orvis had against the defendants. The settlement did not extinguish the plaintiffs' claims against the defendants.

The plaintiffs, as Orvis's assignees, subsequently moved for summary judgment against the defendants on the indemnity claim. They argued that the defendants had an implied duty to indemnify Orvis, and, that the plaintiffs, as assignees of Orvis's right to indemnity, were entitled to enforce that right. The defendants objected. The trial court deferred its ultimate ruling on the motion until after the trial on the plaintiffs' underlying claims against the defendants. On January 30, 2012, the jury returned a verdict in the defendants' favor.

Thereafter, the defendants moved for summary judgment, arguing that the jury's finding that the defendants were not liable to the plaintiffs precluded the plaintiffs from recovering on the indemnity claim. The plaintiffs objected and filed a cross-motion for the entry of final judgment. The trial court issued a written order denying the defendants' motion and granting the plaintiffs' motion. Relying on *Morrissette v. Sears, Roebuck & Co.*, 114 N.H. 384 (1974), the court found that "the verdict had no impact upon [the plaintiffs'] right to indemnity under the law," and that the plaintiffs had to prove only Orvis's potential liability at the time of settlement. The court ruled that the plaintiffs had satisfied their burden and, as a result, awarded them one million dollars based upon the defendants' implied obligation to indemnify Orvis for its settlement payment to the plaintiffs.

With respect to the plaintiffs' claim for attorney's fees and costs, the court found that this claim was "akin to a claim for similar fees in cases where parties elect to litigate the issue of insurance coverage," and that "if the insured prevails he shall receive court costs and reasonable attorney fees." Since the plaintiffs had prevailed on the issue of indemnity, the court found that they were "entitled to reimbursement of [Orvis's] defense costs and attorney['s] fees incurred up until the time of settlement" and awarded the plaintiffs $298,811.73 in attorney's fees and costs. This appeal followed.

On appeal, the defendants argue that the trial court erred in granting summary judgment for the plaintiffs on the issue of indemnity. They further contend that there is no basis for the trial court's award of attorney's fees and costs and that, therefore, the award must be set aside. Finally, the defendants argue that the trial court erred in finding Knothe liable as a successor to Leisure Life.

When "reviewing the trial court's summary judgment rulings, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." *Coco v. Jaskunas*, 159 N.H. 515, 518 (2009) (quotation omitted).

We first address the defendants' claim that the trial court erred in ruling that they were required to indemnify the plaintiffs, as assignees of Orvis. We agree.

■ ■ We begin by reviewing the law pertaining to indemnity. In New Hampshire, the right to indemnity has historically existed: (1) "where the indemnitee's liability is derivative or imputed by law"; (2) where an implied duty to indemnify exists; or (3) where there is an express duty to indemnify. *Hamilton v. Volkswagen of America*, 125 N.H. 561, 563 (1984) (quotation

omitted). In the first situation, we have said that the right to indemnity arises "where one is legally required to pay an obligation for which another is primarily liable." *Coco*, 159 N.H. at 519 (quotation omitted); *see also Greenland v. Ford Motor Co.*, 115 N.H. 564, 571 (1975); *Morrissette*, 114 N.H. at 387. This situation typically occurs in tort actions "where one who, without active fault on his part, has been compelled by a legal obligation to pay an injured party for injuries caused by active fault of another." *Morrissette*, 114 N.H. at 387 (quotation and brackets omitted).

■ The second situation occurs where there is an implied agreement to indemnify. *See Jaswell Drill Corp. v. General Motors Corp.*, 129 N.H. 341, 346 (1987). "[I]ndemnity agreements are rarely to be implied and always to be strictly construed." *Hamilton*, 125 N.H. at 564. Nonetheless, an implied agreement to indemnify may exist when an indemnitor performs a service under contract negligently and, as a result, causes harm to a third party in breach of a nondelegable duty of the indemnitee. *Jaswell Drill Corp.*, 129 N.H. at 346. The rationale for finding an implied agreement to indemnify under such circumstances is akin to the rationale for finding a right of indemnity in tort actions in that it is based upon "the fault of the indemnitor as the source of [the] indemnitee's liability in the underlying action and, conversely, the indemnitee's freedom from fault in bringing about the dangerous condition." *Id.* (quotation omitted).

■ The third situation involves an express duty to indemnify, *Hamilton*, 125 N.H. at 563, which arises when there is an express contract providing for indemnity, *see Kessler v. Gleich*, 161 N.H. 104, 108 (2010). Under such circumstances, the right to indemnity is determined by the specific terms of the contract for indemnity. *See id.* We construe express indemnity agreements strictly, *id.*, and indemnity arising from an express contract "is not subject to equitable considerations," *Reyburn Lawn Designers v. Plaster Dev't Co.*, 255 P.3d 268, 274 (Nev. 2011). "[E]xpress indemnity allows contracting parties great freedom to allocate indemnification responsibilities as they see fit, and to agree to protections beyond those afforded by the doctrines of implied or equitable indemnity." *Prince v. Pacific Gas & Elec. Co.*, 202 P.3d 1115, 1120 (Cal. 2009) (quotations and brackets omitted).

■■ Here, the plaintiffs make no claim that the defendants expressly contracted to indemnify Orvis. The parties agree, as do we, that to the extent that a right of indemnity exists in this case, it arises under the first scenario in that Orvis's liability is derivative of the defendants'. This form of indemnity has been described as an equitable right implied by law, which is based upon principles of restitution. *See Pulte v. Parex*, 942 A.2d 722, 730-31 (Md. 2008); *see also Prince*, 202 P.3d at 1124 (explaining that "the

basis for indemnity is restitution" (quotation and brackets omitted)); *District of Col. v. Wash. Hosp. Center*, 722 A.2d 332, 339 (D.C. 1998) ("Indemnity is a form of restitution."); *Oates v. Diamond Shamrock Corp.*, 503 N.E.2d 58, 59 (Mass. App. Ct. 1987) ("[r]estitution is the basis for indemnity"). In its most basic sense, indemnity means reimbursement, *Stanley v. Kelley*, 90 N.H. 210, 214 (1939) ("Indemnity imports reimbursement."), and is based upon "the concept that one party is unjustly enriched at the expense of another when the other discharges liability that should be the first party's responsibility to pay," *Oates*, 503 N.E.2d at 59. In other words:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

*McCullough v. Company*, 90 N.H. 409, 412 (1939) (quotation omitted), *superseded by statute on other grounds, as stated in Gagne v. Greenhouses*, 99 N.H. 292, 293-94 (1954); *see also* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22, at 272 (2000). Thus, unless otherwise provided by contract, in order to seek indemnity, "an indemnitee must extinguish the liability of the indemnitor . . . either by a settlement with the plaintiff that by its terms or by application of law discharges the indemnitor from liability or by satisfaction of judgment that by operation of law discharges the indemnitor from liability." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22 comment *b* at 272.

The theory behind this principle "is that the indemnitee has provided a benefit to the indemnitor by fully discharging the indemnitor's liability, making restitution appropriate." *AVCP Reg. Housing Auth. v. R.A. Vranckaert*, 47 P.3d 650, 658 (Alaska 2002); *see* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, Reporters' Note § 22 comment *b* at 276-77. However, "[t]his [is] true only if the indemnitee provided the indemnitor with protection from liability." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, Reporters' Note § 22 comment *b* at 277. "Indemnification exists to prevent unjust enrichment; such enrichment occurs only when the indemnitee's payment to the victim protected the indemnitor from any future liability." *C & E Services, Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 277 (D.D.C. 2009). "It would . . . be unfair under the basic principles of restitution to make a person pay noncontractual indemnity while he was still liable to the plaintiff." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, Reporters' Note § 22 comment *b* at 277; *C & E Services, Inc.*, 601 F. Supp. 2d at 277 (stating that if

indemnitor remains potentially liable "to the party with whom the indemnitee settled, there is no unfairness that needs rectification" because indemnitor was potentially liable to underlying plaintiff "before the settlement and remains" so after settlement). In such a case, the indemnitor "has not been unjustly enriched by the settlement payment to the [underlying] plaintiff." *C & E Services, Inc.*, 601 F. Supp. 2d at 277.

Significantly, the plaintiffs have not cited, nor are we aware of, any cases in which the indemnitor has been required to indemnify the indemnitee when, after settlement, the indemnitor remained potentially liable to the underlying plaintiff. Indeed, according to the *Restatement*, "[n]o case has permitted noncontractual indemnity against a person still liable to the plaintiff." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, Reporters' Note § 22 comment *b* at 277; *see C & E Services, Inc.*, 601 F. Supp. 2d at 277.

■ Once an indemnitee has discharged the liability of the indemnitor, either by settlement or judgment, in order to obtain indemnification, the indemnitee must then prove that the indemnitor was primarily liable for the plaintiff's injuries. *See Morrissette*, 114 N.H. at 387; RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY, Reporters' Note § 22 comment *c* at 277 ("A person seeking indemnity must prove that the indemnitor would have been liable to the plaintiff."). In this way, indemnity is distinguished from contribution because, whereas indemnity shifts "the entire burden of loss from one tortfeasor who has been compelled to pay it, to another whose act of negligence is the primary cause of the injured party's harm," contribution "is partial payment made by each or any of jointly or severally liable tortfeasors who share a common liability to an injured party." 41 AM. JUR. 2D *Indemnity* § 3 (2005).

■ These principles are consistent with, and reflected in, our comprehensive statutory framework for apportionment of liability and damages among tortfeasors. *See* RSA 507:7-d to :7-i (2010); *see also DeBenedetto v. CLD Consulting Eng'rs*, 153 N.H. 793, 798 (2006) (discussing the legislative history of RSA 507:7-d to :7-i). RSA 507:7-e, governing apportionment of damages among claimants and tortfeasors, provides, in pertinent part:

I. In all actions, the court shall:

(a) Instruct the jury to determine, or if there is no jury shall find, the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties; and

(b) Enter judgment against each party liable on the basis of the rules of joint and several liability, except that if any party shall be

less than 50 percent at fault, then that party's liability shall be several and not joint and he shall be *liable only for the damages attributable to him.*

(Emphasis added.) We have said that "[t]he legislative history of RSA 507:7-e plainly demonstrates that," when the legislature amended the statute to its current form, "an underlying purpose of the . . . amendment was to relieve defendants involved in personal injury lawsuits from damages exceeding their percentage of actual fault." *Ocasio v. Fed. Express Corp.*, 162 N.H. 436, 446 (2011) (quotations omitted). In addition, RSA 507:7-f, II, addressing contribution among tortfeasors, provides that "[c]ontribution is not available to a person who enters into a settlement with a claimant unless the settlement extinguishes the liability of the person from whom contribution is sought, and then only to the extent that the amount paid in settlement was reasonable."

■ Turning to this case, we conclude that the plaintiffs' indemnity claim fails because when Orvis settled with the plaintiffs, it extinguished its own liability, but not that of the defendants. The trial court's order addressing the settlement states that "[t]his case has been settled as to *all defendants except Leisure Life Industries.*" (Emphasis added.) In consideration for the receipt of one million dollars and the assignment of Orvis's indemnity rights against the defendants, the plaintiffs released Orvis from all claims of liability asserted against it. In contrast, there was no release of liability running to the defendants, and the defendants remained potentially liable to the plaintiffs under the theories of direct liability asserted against them, including the strict liability claim. Indeed, after the settlement with Orvis and the stove defendants, the plaintiffs proceeded to trial on their liability claims against the defendants and, as a result, the defendants bore both the expense of defense and the risk of a substantial adverse verdict.

Although, as the plaintiffs point out, their settlement with Orvis would have reduced the amount of any judgment against the defendants by the amount of consideration paid, it did not extinguish the defendants' potential liability to the plaintiffs. *See* RSA 507:7-h. Since Orvis's settlement did not extinguish the defendants' liability, there was no basis for Orvis (or the plaintiffs, as assignees of Orvis) to obtain indemnity from the defendants. *See District of Col.*, 722 A.2d at 341-42; RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22, at 272. The defendants were therefore entitled to judgment, as a matter of law, on the indemnity claim. *See United States Brass Corp. v. Dormont Mfg. Co.*, 242 Fed. Appx. 575, 579 (10th Cir. 2007) (plaintiff could not recover in common law indemnity for pre-trial settlement payment because plaintiff's settlement did not extinguish liability of defendant); *C & E Services, Inc.*, 601 F. Supp. 2d at 278 ("Since

it is indubitably clear that the settlement did not intend to relieve [the indemnitor] of any further liability and that it was not designed to settle the entire claim that the [underlying plaintiff] had against both of them, [the indemnitee's] claim for indemnification has to fail.").

The plaintiffs argue that *Morrissette* compels a different result. We disagree. In *Morrissette*, the defendant did not argue that the third-party plaintiff was not entitled to indemnification because she failed to extinguish the defendant's liability as to the original claimant, and we did not address that issue. Rather, we addressed the specific question presented for our review, which concerned an indemnitee's burden of proof as to its own liability in an action for indemnity where the original action settled, *i.e.*, its burden to show that it settled under legal compulsion, rather than as a mere volunteer. *See Morrissette*, 114 N.H. at 387.

■ The defendants further argue that the trial court erred in awarding Orvis's attorney's fees and costs to the plaintiffs. We agree. The trial court ruled that the plaintiffs were entitled to reimbursement of Orvis's attorney's fees and costs based upon its ruling that they were entitled to indemnification. Since we have found that the trial court erred in ruling that the plaintiffs were entitled to indemnification, we necessarily find that the trial court erred in awarding attorney's fees and costs.

In light of our ruling, we need not address the defendants' argument regarding successor liability.

*Reversed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.