Merrimack, }
May 1, 1928. }

CHESTER A. COLBY *v.* MICHAEL J. LEE.

304

*John M. Stark* and *David F. Dudley* (*Mr. Dudley* orally), for the plaintiff.

*Robert W. Upton* and *Joseph C. Donovan* (*Mr. Upton* orally), for the defendant.

BRANCH, J. 1. The first claim of error argued by the defendant is that the charge of the court upon the issue of contributory negligence was inadequate and inconsistent; that it did not clearly submit to the jury the question of the plaintiff's fault and that the denial of the defendant's requests Nos. 1 and 3 was, therefore, error.

The subject of contributory fault was touched upon by the presiding justice no less than seven times in the course of his charge. The jurors were told first that the keeper of a dog "is liable to one who is injured by such dog, if such injury . . . was not brought upon himself by his own unreasonable conduct, and could not have been avoided by reasonable or due care." They were next informed that

in order to entitle the plaintiff to a verdict he must prove that he "did not by any unreasonable act of his bring the injury upon himself." They were then told that one of the questions for them to consider was "did the plaintiff negligently bring the injury upon himself." In a later paragraph the subject was elaborated as follows:

"The plaintiff was required to do everything which a reasonably prudent person would have done under the same circumstances and existing conditions to avoid injury from the dog. In other words, if he was at fault or to blame and that fault or blame caused or brought upon him the injuries complained of, he cannot recover. If on the other hand he acted as a reasonable person would have acted under the same circumstances and confronted by the same conditions, he would be free from fault or blame."

Subsequently it was stated that the keeper of a dog "is liable for such injuries as the dog does, provided the person injured . . . did not bring the injury upon himself by any unreasonable act on his part." Still later the jury was told that if they found "that the plaintiff unwisely caused or brought the injury upon himself" their verdict should be for the defendant; and finally by way of summary, the court included among the facts which must be proved to entitle the plaintiff to a verdict, the following: "that the plaintiff did not cause or bring the injury upon himself."

The foregoing instructions plainly included accurate statements of the law. The full paragraph above quoted, standing alone, gave a correct exposition of the principle of contributory negligence which was entirely adequate for this case. In fact, the defendant admits that "the correct rule of law was stated twice in the course of the instructions." Therefore, although it may be conceded that the above mentioned requests were also accurate statements of the law (*Quimby* v. *Woodbury*, 63 N. H. 370), their denial was not error. The presiding justice had the privilege of choosing his own language. *State* v. *Mannion*, 82 N. H. 518, 526; *Romani* v. *Railroad*, 81 N. H. 206, 209. It follows that the present claim of error must be overruled unless the charge, in addition to its correct statements of law, contained inaccuracies of such a character that the jury might have been misled, to which exception was specifically taken. *West* v. *Railroad*, 81 N. H. 522.

The only ground upon which the defendant excepted to the charge was that it permitted the jury to find for the plaintiff "provided the plaintiff did not do any unreasonable act to bring the injury upon himself." The contention therefore must be that the charge was

misleading because the word "unreasonable" was three times used in connection with "acts" and "conduct" instead of the word "negligent." Since the idea of reasonable conduct under a given set of circumstances underlies the legal conceptions of due care and negligence, and since the duty of the plaintiff to act as a reasonably prudent man was correctly stated to the jury, the impropriety of using the familiar word "unreasonable" instead of the legal adjective "negligent" when describing conduct which would bar recovery is not apparent, nor has it been pointed out by counsel how the jury could have been misled by it. Since negligent conduct is, by its definition, unreasonable conduct under the circumstances, it follows that all negligent conduct is unreasonable, and hence all negligent conduct was included within the terms "unreasonable acts" and "unreasonable conduct" which were used by the court. If it is not conversely true that all unreasonable conduct is negligent, then it was the plaintiff and not the defendant who suffered by the use of the word "unreasonable" in the charge, since this is the more inclusive term and the jury was told that any unreasonable conduct on the part of the plaintiff would bar a recovery. It follows that the charge if possibly inaccurate in its phraseology was sufficiently favorable to the defendant, and the exception must be overruled. *Parkinson* v. *Railroad*, 61 N. H. 416.

2. The defendant's second assignment of error is that the court wrongfully denied his requests numbered 7 and 10. He argues that the charge contains no adequate instructions with reference to his claims that the plaintiff was engaged in a trespass at the time of his injury, first, because he made an unjustified attack upon the dog and, second, because he went upon the defendant's premises for this purpose. He asserts that the denial of his seventh request in particular "took from the defendant an important part of his defense almost as effectively as if the issue had been wholly withdrawn from the jury."

There is no substantial basis for these criticisms of the charge. The jury was told no less than four times, in the language of the statute, that the plaintiff could not recover if, at the time of his injury, he was "engaged in the commission of a trespass or other tort" (P. L., c. 150, s. 23), and similar expressions were twice used in other parts of the charge. The meaning of the word trespass was thus explained:

"By trespass we mean any illegal or unlawful interference with the property of another. A reasonable use of the highway, including the sidewalks thereon does not render one a trespasser. Neither would

one become a trespasser who uses or attempts to use a walkway to another's building or premises if the use or attempted use was for a lawful purpose and made in a lawful reasonable manner under reasonable circumstances."

With reference to the claim that the plaintiff was the aggressor, the following instruction was given: "Certain testimony has been introduced here as to the characteristics of the dog. This testimony was offered and received for what it may be worth as showing or tending to show that the plaintiff provoked the attack, and you will consider it for no other purpose."

It thus appears that "trespass" was defined with reference to both branches of the defendant's claim, that specific reference was made to his contention that the plaintiff provoked the attack of the dog; that the legal consequences of a trespass by the plaintiff were repeatedly stated, and that the question whether a trespass had been committed was submitted to the jury. This constituted an adequate presentation of the issue to the triers of fact. There is no similarity between this case and *Burke* v. *Railroad*, 82 N. H. 350, cited by the defendant, where the court wholly failed to mention an essential element of the defence although specifically requested to charge upon it. In the present case, as in the ones referred to upon page 362 of that opinion, it does not appear "that the judge failed to perform the duty whereto he was moved. He instructed upon the subject presented." "The legal principle governing the point 'was fully stated in the general instructions. Each party had an opportunity in argument to apply it to his view of the facts, and it was not error of law for the court to refuse to give instructions on its application to particular evidence.' *Rublee* v. *Belmont*, 62 N. H. 365 and cases cited." *Piper* v. *Railroad*, 75 N. H. 228, 235; *Walker* v. *Railroad*, 71 N. H. 271, 273. The extent to which rules of law shall be given specific application to the claims of the parties and the facts disclosed by the evidence in a given case must be left to the sound discretion of the trial court. There was no error in the denial of the defendant's requests numbered 7 and 10.

3. The defendant objected to the following statement of plaintiff's counsel in argument: *Mr. Stark:* "I can assure you it is no great pleasure to come in here and sue Mr. Lee, a citizen of Concord, but that is one of the unpleasant duties a lawyer has to do if other means cannot be effected," and the court allowed an exception. The complaint now made in regard to this statement is that it suggested to the jury that there had been negotiations for a settlement and an offer

of compromise by the defendant. This claim is wholly without foundation. In fact, the following sentence of the argument demonstrated clearly that the meaning of the above passage was exactly contrary to that asserted by the defendant, *i. e.* that since Mr. Lee had refused to consider a settlement, legal action was the plaintiff's only alternative.

4. The defendant also objected to a statement of plaintiff's counsel in argument that "it seems that the dog was in training with a newspaper to jump" and the following proceedings then took place: *Court:* "The evidence was they trained him with a newspaper and he got in the habit of grabbing it." *Mr. Upton:* "Not this dog." *Court:* "You put it in. I assumed the evidence related to the case we were trying. It may stand, if you want it to." *Mr. Upton:* "Subject to exception." *Court:* "You may have an exception." *Mr. Stark,* continuing: ". . . and by these dogs' early training they were well qualified to jump and snap."

One Jordan, a former owner of the dog, called as a witness by the plaintiff, testified as follows: "Q. If a dog of this type was kicked what would be the reaction? A. They are apt to grab at anything that strikes them. For instance, in house breaking these dogs, we generally use a newspaper to correct them, and the natural tendency is to grab that paper."

Defendant's argument in support of this exception is as follows: "There is no evidence that this particular dog was trained with a newspaper for any purpose. There was no evidence that this dog acquired the 'habit of grabbing' at a paper. There was no evidence that any such dogs were trained with a newspaper to jump and snap or bite."

A sufficient answer to the first two sentences of this argument is to be found in the incisive comment of the trial judge, "You put it in. I assumed the evidence related to the case we were trying." An argument that such dogs were trained with a newspaper and so learned to jump would have been justified by the testimony. The argument that they are trained with a newspaper "to jump" was not a material departure from the evidence. The statement that they were well qualified by their early training "to jump and snap" was a proper inference from the testimony. Counsel did not assert that they were trained to "snap or bite."

5. During the argument of plaintiff's counsel the following proceedings also took place: *Mr. Stark:* "They come in here and try to show a record on this man and asked him if five years ago or some time

he had not been arrested and he said he was. Now was that of importance in this case? If a man made a mistake five years ago and paid the penalty, served his time and came out and been a decent kind of fellow since and supported his wife and family and worked . . ." *Mr. Upton:* "I object and except to that. There is no evidence of those things."

It is doubtful whether under the rule laid down in *Tuttle* v. *Dodge*, 80 N. H. 304, any question of law was raised by the foregoing statement of counsel. In certain aspects the case is similar to *Gobrecht* v. *Beckwith*, 82 N. H. 415. The sentence to which objection was made contained a number of statements of fact, some of which were unquestionably supported by the evidence. Defendant's counsel failed to specify which of these statements found no support in the testimony. If he had made clear the point of his objection and obtained a ruling of the court, the error if any might easily have been corrected.

But if it be assumed that an exception was properly taken, it will not avail the defendant for there was sufficient evidence to warrant the argument. The position of the defendant as stated in his brief is that "there was no evidence that he was a 'decent fellow since' his conviction of crime or that he had supported his wife and family." There was ample evidence that the plaintiff had worked as steadily as the average laborer. His wife testified that he "always worked prior to this time," that "he had steady work most of the time." There was evidence that he had been employed by the railroad for many years, that he had worked as a painter for two or three years and that at the time of his injury he was employed by a bottling company. He was at this time living with his family and he was taking his wife and son to a fair when the occurrence in question took place. His wife, his son and his father-in-law testified in his behalf at the trial. Under these circumstances it might properly be inferred that a normal family relationship existed in the Colby household and that he "supported his wife and family." There was also evidence that the plaintiff had a recommendation from the foreman for whom he worked at the bottling company's plant. From the foregoing evidentiary facts and the appearance of the plaintiff on the stand it was not improper to argue that he had been "a decent kind of fellow" since his arrest.

The order must therefore be

*Exceptions overruled.*

All concurred.

ON REHEARING. After the filing of the foregoing opinion, the defendant moved for a rehearing on the following grounds:

"(1) That the instructions to the jury did not clearly and definitely state that the law imposed upon the plaintiff the duty to exercise reasonable care to avoid being injured.

"(2) That the refusal of the trial court to give the defendant's requests numbers 7 and 10 constituted error because there was no adequate presentation in the charge of the law relating to the subject matter of these requests."

BRANCH, J. The first reason assigned by the defendant in support of its motion is without merit and calls for no discussion. The second reason requires further notice.

In the opinion it is stated that "the extent to which rules of law shall be given specific application to the claims of the parties and the facts disclosed by the evidence in a given case must be left to the sound discretion of the trial court." The defendant argues that this statement is subject to some qualification, and this criticism appears to be justified in view of our decisions in *Simoneau* v. *Railway*, 78 N. H. 363, 365; *Burke* v. *Railroad*, 82 N. H. 350, 361; *McCarthy* v. *Souther*, ante, 34, 35. The passage above quoted should be modified so as to read as follows: "The extent to which rules of law shall be given specific application to the claims of the parties and the facts disclosed by the evidence in a given case must be left to the sound discretion of the trial court, provided the jury is 'fully and correctly' instructed. *Burke* v. *Railroad*, 82 N. H. 350, 361." That the jury was correctly instructed cannot be doubted. Our former conclusion that they were as fully instructed as the evidence in the case demanded, is affirmed. A re-examination of the record, however, leads to the further conclusion that the granting of the defendant's 7th and 10th requests would have been error.

The plaintiff's evidence tended to prove that as he was entering a store near the defendant's house, the dog in question attacked him and tore his trousers; that when he came out of the store the dog again attacked him and bit his finger. The plaintiff testified that after he was bitten he went to the door of the defendant's house "to notify Mr. Lee about the dog," but could not "raise anybody"; that the dog followed him up the walk nearly to the door; that as he came out of the walk the dog jumped at him several times and that he kicked at the dog "once or twice perhaps" but did not hit him.

A witness for the defendant testified that on the day of the acci-

dent, he saw "a man" in Mr. Lee's yard "trying to kick the dog." He described two kicks as follows: "he kicked the dog way over here [indicating], and then he turned around and kicked the dog this way. I don't know whether he hit him or not." Asked if he saw the man get bitten, he replied, "No." Another witness for the defendant testified that after hearing something about plaintiff's encounter with the dog from the keeper of the store, he went out and saw the plaintiff "standing on the sidewalk directly in front of Mr. Lee's residence," that the plaintiff said "this dog just bit me, bit my leg," and inquired if Mr. Lee was at home, and he answered that "he [Mr. Lee] was working."

It is argued that from this evidence the jury might have disbelieved the plaintiff's testimony as to the object of his visit to Mr. Lee's house, and found "that the plaintiff went upon the defendant's premises for the purposes of attacking or provoking the dog." Even if this were true, it would not aid the defendant. The account given by the plaintiff and that given by the witness of the encounter in the defendant's yard were consistent in all substantial particulars. The statement of the witness that the plaintiff twice kicked at the dog was not denied by him, but the foregoing testimony contains no contradiction of the plaintiff's evidence that he was bitten before he went into the defendant's yard at all. Consequently, an instruction given in accordance with defendant's 7th request, which contemplated a possible finding that he was bitten while there, would have been misleading and improper.

Similar considerations apply to defendant's 10th request. The only evidence tending to prove that the plaintiff attacked the dog at all was that of the witness quoted above, who saw him in the yard and who testified, "I imagine the man was mad and he was trying to kick the dog and he got the dog mad." There was no evidence whatever that the plaintiff made any attack upon the dog before he went into the yard. If the imagination of the witness would justify a finding that the plaintiff attacked the dog in the yard, it would not justify a finding that he was bitten at that time, and an instruction which suggested the possibility of such a finding would have been improper.

*Former result affirmed.*

All concurred.