Rockingham, }
April 4, 1933. }

WILLIAM G. MILLER, *Adm'r v.* JOSEPH F. DANIELS *& a.*

JUNE I. MILLER, *by her father and next friend v.* SAME.

WILLIAM G. MILLER *v.* SAME.

194

*Frederick J. Grady* and *Walter A. Pillsbury* (*Mr. Pillsbury* orally), for the plaintiffs.

*O'Connor & Saidel* (*Mr. Saidel* orally), for the defendants.

MARBLE, J.   On the afternoon of the accident the defendants were driving north on Mammoth road toward Manchester.   Their car was a Dodge sedan, 1926 model, with two-wheel brakes and without chains.   As they approached the residence of Herbert W. Nugent, situated on the easterly side of the highway in Londonderry, a sled on which Barbara and June Miller were coasting suddenly "flashed out from the pathway" leading to the Nugent house, and ran along in a northerly direction in front of the car.

Bergeron applied the brakes and turned to the left.   The children were crushed underneath the automobile and dragged a short distance. They were picked up at a point approximately 33 feet north of the pathway.   The car came to a stop 30 feet beyond this point.

The pathway or walk down which the children were sliding was 75 feet in length, extending from the piazza of the Nugent house to a mail box near the edge of the highway.   In this distance there was a drop of about 5.8 feet.   The highway dropped 2.2 feet in the first hundred feet going north.   The garage driveway was situated south of the walk and curved toward the north as it neared the highway. On the south side of the walk there was a cement wall and on the north side an embankment.   Both extended to the point where the walk and driveway merged.

The snow which had been shoveled from the walk had been piled north of the walk, but there was snow along the top of the wall, high banks on each side of the road, and a pile about three and a half feet high south of the driveway.

The children were lying flat upon the sled, and could not have been visible to one approaching from the south until they reached the end of the cement wall. It was only 23 feet from there to the highway, and the speed of the sled was 15 or 20 miles an hour. In view of the snow pile south of the driveway and the ridge of snow at the side of the road, the defendants could not be found negligent for failing to see the children during the second or so of time necessary for the sled to run that distance. Neither were they at fault for not observing them as they went into the Nugent yard, since there was a curve in the highway near the Fitts house, so-called, about 200 feet south of the Nugent premises.

Mammoth road is part of the state highway system, and is patrolled by officers of the motor vehicle department. So far as the record discloses, the defendants had no reason to anticipate coasting in that vicinity. Clearly the walk was not designed for such a purpose, and even if the defendants had been familiar with the premises (and there is no evidence that they were), this fact alone would not have charged them with notice that the walk might be used as a sliding-place. There is no evidence that either of the defendants saw the children until the sled came into the road four or five feet in advance of the car.

"Traffic has the right to move in a reasonable way" (*Rouleau* v. *Blotner*, 84 N. H. 539, 540), and "There is no carelessness in encountering dangers not reasonably to be sensed and not in fact known." (*Piateck* v. *Swindell*, 84 N. H. 402, 403).

Nor is there sufficient evidence that either of the defendants "after he knew of the dangerous situation could have prevented the accident by due care." *Osgood* v. *Maxwell*, 78 N. H. 35, 39.

Edward Miller, a brother of the children, saw the accident as he was coming home from school. He stated that the defendants were "going past" his house at a speed of 25 or 30 miles an hour "when the children came into the road." The Miller house was almost "directly across" the street from the Nugent house, the latter being a "little northerly." Edward was walking southward from Smith's corner, which was about 460 feet north of the Nugent driveway, when he saw the children going up the path to slide. The defendants were not then in sight.

He saw the children get on the sled and start down. When he saw the car approaching he shouted a warning, but without effect. The sled went out almost to the middle of the road, and then ran northerly a short distance ahead of the car. The car swung to the left and ran into a snow bank. The children were found lying on the ground "a

little ways down from the mail box," which was situated three or four feet north of the junction of the walk and road.

The witness later testified that the accident happened as far north of the mail box as the distance between certain designated objects in the court-room. Counsel thereupon agreed that the distance thus indicated was about eight feet. If the witness was accurate in his estimate, it is quite obvious that Bergeron had no time, after the sled appeared in front of him, either to check the speed of the car or to alter its course appreciably.

A motor-vehicle officer, who had arrived on the scene shortly after the accident, testified that a blood spot, presumably at the place where the children were picked up, was distant eleven full-stride paces (approximately 33 feet) from the center of the walk as it entered the highway. But this spot did not in all probability mark the point of collision. Since the children were caught by the under part of the car, they must have been carried along for some few feet at least. Bergeron testified that they were dragged "maybe the length of the car." If this were true, the accident may well have happened as close to the mail box as Edward Miller described.

Even if the speed of the car were no greater than 15 or 20 miles an hour (as claimed by the defendants), the car would have traveled the entire distance of 33 feet in one and one-half seconds at most. The sled was within a few feet of the car when the defendants first saw it. They could only guess the direction it would take. The time was too short for anything but instinctive action, and action under such circumstances "cannot be said to be careless unless the actor is shown to be unfit to act" in such an emergency. *Collette* v. *Railroad*, 83 N. H. 210, 217. See also *Morrison* v. *Railroad, ante,* 176; *Morris* v. *Railroad,* 85 N. H. 265, 272; *Johnson* v. *Railroad,* 83 N. H. 350, 364.

Edward Miller, who was familiar with the hill and the sled on which the children were coasting, was asked how far the sled would go "from the mail box down the road." He answered: "Oh, not very far . . . After you left the mail box you wouldn't go farther than me to Mr., the other lawyer there, Grady." Considering the size and arrangement of court-rooms, it is fair to assume that this distance did not exceed 30 feet.

The surface of the road was covered with hard-packed snow, and it was very slippery. None of the plaintiffs' witnesses testified very definitely as to the distance within which a car under such conditions could be stopped. The traffic officer was asked, in view of his experience with the road that day, if at twenty miles an hour a car with

two-wheel brakes could be stopped within 60 feet. He replied: "I don't think it could be done." The only other witness who testified on the subject was Herbert W. Nugent. To the question, "Twenty miles an hour that day, on that road, with your Buick car with chains on could you [have] stopped within thirty feet?" he answered, "I can't say."

This answer was somewhat modified by his succeeding testimony but at no time did that testimony come within the rule that opinion evidence as to an alleged fact must be sufficiently definite to justify the finding of that fact by a balance of probabilities. *L'Esperance* v. *Sherburne*, 85 N. H. 103, 110, and cases cited.

The same is true of the evidence relating to the efficacy of chains, to the distance sleds sometimes ran on the highway, and to the chances of avoiding a collision under certain hypothetical conditions.

In view of the conclusion reached it is unnecessary to consider the applicability of P. L., *c.* 378, *s.* 12, which prohibits coasting "in a highway, in a village or thickly settled portion of a town or city, to the danger of travelers."

The motions for directed verdicts should have been granted.

*Judgments for the defendants.*

All concurred.