Strafford,

ELLEN MUSGRAVE, *Adm'x*
*v.*
GREAT FALLS MANUFACTURING COMPANY *& a.*

*John H. Parsons, Laurence I. Duncan* and *Robert W. Upton* (*Mr. Duncan* orally), for the plaintiff.

*Hughes & Burns (Mr. Burns* orally), for the defendants.

BRANCH, J. The motions for nonsuits and directed verdicts were properly denied.

There was evidence from which the following facts might be found. For many years prior to April 22, 1929, the deceased was employed by the defendant Great Falls Manufacturing company as a second hand in its bleachery in Somersworth. Upon that date the Great Falls Manufacturing company conveyed its plant to the defendant, Dwight Manufacturing company, and the deceased continued to do the same work as a servant of the latter company until July, 1929, when he left its employ on account of the illness from which his death subsequently resulted.

One step in the bleaching process employed by the defendants required that the cloth which was being finished should pass through a weak solution of sulphuric acid, known as a "sour," which contained on an average two per cent of sulphuric acid. This solution required very frequent testing in order to keep it at a uniform strength, and the duty of the deceased required that he test it from nine to thirty-five times a day. The most accurate method of making such tests was by the use of hydrometers, two, and later three of which were furnished by the defendant for use in the "wet room" where the deceased was employed. During the whole period of his employment, however, the customary method of testing the solution employed by the defendants' servants in the "wet room" was by tasting it, and this practice was well known to the defendants through their overseers in charge of the bleachery. In making this kind of a test the deceased was accustomed to dip his fingers in the solution and apply them to his tongue. The solution, if of the right specific gravity, was said to taste like vinegar of ordinary strength.

The cause of the decedent's death was multiple neuritis, and the plaintiff's evidence tended to prove that this disease was caused by the long-continued ingestion of minute quantities of sulphuric acid taken in testing the "sour" solution. It has been known to the medical profession for many years that sulphuric acid is injurious if taken internally in small quantities over an extended period of time. No warning was ever given to the deceased that the practice of tasting the "sour" solution might seriously affect his health.

Under the circumstances set forth above, the defendants were chargeable with knowledge of the possible deleterious effects of sulphuric acid upon the health of their employees when frequently taken

into the mouth over a long period of time. *Harvey* v. *Welch, ante,* 72; *Frear* v. *Company,* 83 N. H. 64, 65; *Gobrecht* v. *Beckwith,* 82 N. H. 415, 420. Being chargeable with this knowledge, the evidence summarized above warranted a finding that the defendants were negligent in permitting the use of a dangerous method of testing the acid solution without warning to their employees of the danger incident to this practice. *Harvey* v. *Welch, supra.*

The contention of the defendants that the deceased was guilty of contributory negligence as a matter of law, cannot be sustained. There was evidence from the defendants' overseer, who took charge of the bleachery in 1927, that upon several occasions he directed or requested the deceased to use a hydrometer in making tests in order to "turn out better work." The testimony of this witness was much discredited by self-contradictions, and the jury was not bound to accept it as true. *Nawn* v. *Railroad,* 77 N. H. 299, 306. But if the truth of this testimony be assumed, and if it be further assumed that an employee who disobeys his employer's lawful commands is guilty of negligence as a matter of law—a question upon which this court has heretofore refrained from expressing an opinion, *King* v. *Railroad,* 79 N. H. 95, 96—the question of plaintiff's care would still be for the jury, since the evidence would clearly justify a further finding that the defendants had acquiesced in the habitual disregard of the overseers' instructions so that they had become a dead letter. *King* v. *Railroad, supra;* 3 Labatt, M. & S. ss. 1120, 1269.

The evidence in regard to the plaintiff's knowledge of the danger that his health might be seriously affected by frequently tasting the acid solution was inconclusive, and, therefore, it cannot be said, as a matter of law, that he assumed the risk.

The fact that the deceased had been in the employ of the defendant, Dwight Manufacturing company, only a few weeks before his final illness commenced is one which might properly be regarded by the jury as of great significance, but would not justify the direction of a verdict in favor of this defendant. During this period he continued the practice of tasting the acid solution many times a day, and it might be found that without this additional poison the disease from which he died would not have developed. If the defendants were found to be jointly responsible for the illness and death of the deceased, they are, of course, severally liable to the plaintiff for the damages thus caused to his estate.

The exceptions of the defendants are, therefore, overruled.

The verdict must be set aside because of errors in the charge.

Subject to the plaintiff's exception, the court charged the jury as follows:

"If you find that the plaintiff's intestate would not have contracted multiple neuritis except by reason of his having previously suffered from some infectious disease, the defendants are not liable for his physical condition."

By this instruction the possibility of a verdict for the plaintiff based upon the ground of multiple causation was eliminated. There was evidence that the deceased suffered from grippe or influenza in December, 1928, and again in March, 1929; that both of these diseases are of an infectious nature and that such infections would render a person more susceptible to harm from the ingestion of sulphuric acid. A finding that the disease which caused the death of the decedent was due to the combined effect of sulphuric acid poisoning, plus a grippe or influenza infection would, therefore, be permissible, and it was error to withdraw this issue from the consideration of the jury. The defendants are not relieved from the natural consequences of their wrong merely because other factors contributed to bring about the injury. *Kenney* v. *Len*, 81 N. H. 427, 434; *Whittemore* v. *Railroad*, 77 N. H. 61, 63.

The plaintiff also excepted to the following instructions:

"If you find that the defendants instructed the plaintiff as to the proper method of performing the work he was engaged to perform and the plaintiff disregarded these rules, the defendants are not liable."

"If you find that the plaintiff failed,—when I say plaintiff, I mean plaintiff's intestate,—failed to comply with the rules or instructions relative to the manner of work he was engaged to do and his failure to do so resulted in the injury complained of, he is guilty of negligence himself and cannot recover in this action."

As applied to the evidence in this case, these instructions were plainly erroneous. As before stated, there was evidence that the long-continued and inveterate practice of the defendants' agents and servants sanctioned the testing of the acid solution by taste. This evidence would clearly justify a finding that by permitting the habitual violation of their instructions, the defendants had waived them and allowed them to become a dead letter. It is true that the jury had previously been told that it was the duty of the defendants not only to provide reasonable rules and regulations, but "to exercise reasonable care to see that the rules and regulations or the methods and practices were actually adopted in the carrying on of the work." It can hardly be assumed, however, that the jury would, without

further explanation, correlate this instruction concerning the duty of the defendants, with the above quoted instructions applicable to the conduct of the deceased. Under these circumstances "there is a probability that the language may have conveyed to the jurors an erroneous conception of the law." *West* v. *Railroad*, 81 N. H. 522, 533.

The court further instructed the jury as follows:

"If a master furnishes his servants with sufficient and suitable tools and appliances to carry on the work they are required to perform, he is not liable for an injury to the employee for reason of the failure of the employee to make use of the materials and appliances furnished and provided."

To this instruction the plaintiff duly excepted. As applied to the evidence before the court, it was plainly misleading and erroneous. A master does not discharge his full duty toward his employees by furnishing suitable tools and appliances to carry on the work they are required to perform, if instructions are necessary as to the purposes for which, and the manner in which they are to be used. *Willis* v. *Company*, 75 N. H. 453, 457. Here the furnishing of hydrometers would not protect the defendants' employees from the danger of sulphuric acid poisoning unless proper instructions as to their use were given and enforced, or unless appropriate warnings as to the dangers of adopting the alternative method of testing the acid solution were given. The effect of the above instruction was to give the jury a distorted idea of the duties resting upon both the defendants and the deceased, to the obvious prejudice of the plaintiff.

Subject to the plaintiff's exception, the court also charged the jury as follows:

"In order to charge the defendants with having produced or caused the plaintiff's intestate's condition which caused his death, you gentlemen should be satisfied that the defendants knew or ought to have known that sulphuric acid in diluted solution might reasonably be expected to affect an average man as the plaintiff says it affected him and their failure to notify him of that fact, their failure to warn will not be regarded as negligence unless the employer knew or in the exercise of reasonable care ought to have known that a warning was necessary."

The effect of these instructions was to relieve the defendants of any duty to warn unless they ought to have anticipated that sulphuric acid in a dilute solution might affect the average man as the plaintiff's intestate was affected. This is not the law. The duty to warn

would arise if the defendant had reason to know that some of the men in its employ might be injuriously affected by the practice of tasting the acid solution even though it might not seriously affect the average man. "Danger consists in the risk of harm as well as the likelihood of it, and the danger calling for anticipation need not be of more probable occurrence than less. If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure so to do is negligence. That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care." *Tullgren* v. *Company*, 82 N. H. 268, 276. "If the defendant on careful thought would have come to the conclusion that among the help there might be one or more who were likely to be seriously affected" by the ingestion of sulphuric acid, "then its failure to use such thought was a failure of its duty to anticipate." *Chiuchiolo* v. *New England &c Tailors*, 84 N. H. 329, 332.

The court also charged the jury as follows:

"References to the record of the earlier trial have been made to compare statements of witnesses here on the stand with their testimony given at the earlier trial, and if you find that witnesses have testified here differently than they testified when on the stand before, that is, if you find they have made conflicting statements, you may consider that fact in determining the weight which you will give to that statement. In no other respect is the fact that the case has been tried before of any importance."

To this instruction the plaintiff excepted upon the ground that "in some instances the witness admitted the truth of the statements made at the former trial thereby making it affirmative evidence of the facts." If, as claimed by the plaintiff, any of the witnesses re-asserted on the stand the truth of their previous testimony without testifying directly to the facts therein stated, their former statements would be affirmative evidence of the facts, and under these circumstances, the last sentence of the above quoted instruction would be erroneous. An examination of the record leaves us in doubt as to whether the plaintiff was prejudiced by this portion of the charge, but at another trial the sentence above referred to should be omitted unless the trial court is clearly convinced that the state of proof demands it.

On the day following the submission of the case to the jury, the court, at the request of the jury, repeated the instructions which had been previously given, and concluded with the following additional instructions:

"I am going to ask you to attempt to further work out a solution of the case because the case has been tried here by the parties at some expense to themselves and some expense to the county and if it is possible to do so and have it disposed of fairly, it ought to be decided, and so I am going to ask you gentlemen to deliberate a little further and work a little harder and see if you can't find or work out some solution you can all adopt as being fair and right and being in justice to the parties."

To this instruction the plaintiff excepted, "on the ground that it does not give proper consideration to the juror's duty to abide his conviction and reference to expense introduces extraneous matter for consideration." We find no error in this instruction. The court merely called upon the jurors to do their duty, and the reference to the expense of the trial was not improper. A similar reference is to be found in the instructions which were given to the jury in *Ahearn* v. *Mann*, 60 N. H. 472, 473, which were approved by the court in that case and which have been quoted upon innumerable occasions since that decision was rendered. The fact that repeated trials may impose an intolerable burden of expense upon the parties is one which may properly be brought to the attention of the jury in emphasizing the importance of their duty to reconcile their differences if possible.

The question presented by the plaintiff's exception to the allowance of the argument of defendants' counsel is not likely to arise at another trial, and for this reason has not been considered.

*New trial.*

All concurred.