Hillsborough,
March 3, 1942. } No. 3301.

N. MARTY FINE (GENERAL EXCHANGE INS. CORP., *Plaintiff in Interest*) *v.* ANTONIO PARELLA.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the plaintiff.

*Paul E. Nourie,* for the plaintiff in interest, filed no brief.

*Devine & Tobin* (*Mr. Tobin* orally), for the defendant.

ALLEN, C. J.   I.   A police officer who investigated the accident testified for the plaintiff.   In cross-examination he was asked if he had any interest in the case and he replied that he had none.   Thereafter the plaintiff's offer of evidence to confirm the answer of the witness was rejected.   The question in its form and substance neither charged nor asserted an interest, and no jury in the exercise of ordinary intelligence would infer an interest from the question. If the answer was disbelieved, yet it remained that there was no "testimony of counsel" from which interest could be found.   The question instead of being of a "pernicious type," was a proper one often asked, and instead of being of the same character as that held improper in *Carbone* v. *Railroad,* 89 N. H. 12, cited by the plaintiff, is in antithetic contrast with it.

II.   The plaintiff requested an instruction that without notice to the contrary he had no duty of care to anticipate that another car on the highway would be operated or parked negligently or in violation of a statute.   The instruction was not given and instead the jury were charged that the plaintiff "was obliged to anticipate the actual situation that he ran into only to the extent that the ordinary person of average prudence would have anticipated it."   The instruction, as applicable to the case, was correct.   When the operator of an

automobile has his view ahead cut off, due care requires him not to exceed a speed at which operators in general drive. It is more or less the common understanding as matter of fact that an operator of an automobile should be on the watch for dangers carelessly as well as innocently caused by others according to the situation. There are many lapses of ordinary care in highway travel, and it may be said that everyone has notice of some likelihood of their occurrence. The careless conduct of persons, pedestrians as well as drivers of vehicles, is not of such rare occurrence that it is to be said as matter of law that in all cases there. is no demand of safety to guard against encountering it until there is actual notice of it. If the probability of encountering it is great enough to induce the ordinary person to prepare to meet it, it is careless not to anticipate the need of preparation. *Tullgren* v. *Company*, 82 N. H. 268, 276, 277.

The situation may be such that careless conduct of others is not a fair requirement of anticipation, and as a general principle this is the rule. *McCarthy* v. *Souther*, 83 N. H. 29, 31, and cases cited. Ordinarily one is not under a duty of care to be on the alert to meet invasions of his rights when he has not been threatened. In the *McCarthy* case it was thought that the general principle was applicable in passing on the conduct of the pedestrian. But "it is commonly understood that . . . some automobile operators . . . act 'with less than normal propriety.' Charged with a realization of this fact, a motorist, under certain conditions, may be required 'to anticipate and provide against that occasional negligence' which is one of the expectable incidents of highway traffic." *Himmel* v. *Finkelstein*, 90 N. H. 78, 79. This reasoning is peculiarly applicable to the case here. The plaintiff findably drove his car where he could not see ahead at a speed in disregard of precaution to avoid dangers in the form of obstructions whether innocently or negligently in his path. The darkness created by the lights of another car entitled the jury to find that the plaintiff's car should have been reduced to a speed permitting an instant stop.

III. The plaintiff sued both for personal injuries and for damages to his car. The plaintiff in interest had insured him for property damage resulting from collision, with a deduction of $50 of damage. Its policy gave it rights of subrogation for any amount it might pay, and its interest was to recover $253, as agreed by the parties. It had its own counsel, but it does not appear that he took any part in the trial of the action, and it may be assumed that plaintiff's counsel alone acted for it in the trial. The court permitted the jury to be

informed of the insurer's interest, and the verdict forms named it as a party in interest with the plaintiff. The record transferred does not disclose the plaintiff's claims in respect to personal injury. The trial court denied a motion to set the verdict aside on the ground of the jury's prejudice.

The plaintiff's claim that it was unnecessary to permit the jury to be informed of the insurance appears to be valid. The merits of the controversy had no dependence upon the fact of insurance. The insurer's support of the claim of the defendant's liability had no tendency to weaken the claim, and its rights of subrogation were no concern to the jury. But if there was no occasion to inform the jury of the insurance, the information was not prejudicial as strict matter of law. At most the prejudice was only of more or less presumption, and the finding that no prejudice affected the verdict is sustainable.

The case in this respect is importantly different from one in which the insurer defends against liability. The view that juries are more disposed to deal properly with the evidence when they have no information whether or not the defendant is insured (*Piechuck* v. *Magusiak*, 82 N. H. 429; *Woodman* v. *Peck*, 90 N. H. 292, 293) is doubtfully applicable to the case here. The plaintiff's claim for damages for personal injuries would seem largely to meet the presumption of prejudice. For that claim he carried no insurance, and it would have a strong tendency to counteract misuse of the evidence of his collision insurance. Neither "a conscious process of reasoning" nor an "unappreciated influence of . . . prejudice" (*Piechuck* v. *Magusiak, supra*, 430) on the part of a jury would assumedly be so undue as to lead it to defeat the claim for property damage at the expense of the claim for personal injury.

Even as to liability insurance, evidence of it "does not necessarily render the trial unfair." *Dimarco* v. *Smith*, 90 N. H. 378. The plaintiff here duly excepted to the admission of the evidence, but asked for no instruction to have it unconsidered on the issue of the defendant's liability. Such an instruction, presumably to have been obeyed, would have prevented any possible misuse of the evidence, and, as has been said, the finding of no prejudice is a valid finding that the evidence was not misused.

The rule in *Piechuck* v. *Magusiak, supra*, remains in force. The case was decided in 1926 and the general increase of motor vehicle liability insurance since then as matter of common knowledge might serve to make evidence of it less likely to provoke prejudice. But the converse of evidence of no insurance is so interrelated with that

of carriage of insurance that the evidence in either situation ought not to be unnecessarily received. It remains as immaterial with some chance of its use for "a legally harmful purpose" (*Piechuck* v. *Magusiak, supra,* 431). It does no good and may do harm.

*Judgment on the verdict.*

All concurred.