Merrimack,
May 1, 1945. } No. 3522.

FLORENCE CALLEY (*by her mother and next friend*)

*v.*

BOSTON & MAINE RAILROAD.

ELLA CALLEY *v.* SAME.

ROSELLE MACDONALD *v.* SAME.

360

*Murchie & Murchie (Mr. Alexander Murchie* orally), for the plaintiffs.

*Sulloway, Piper, Jones, Hollis & Godfrey (Mr. Jones* orally), for the defendant.

MARBLE, C. J. Defendant's counsel contend that it was the legislative intent to make applicable to overhead railroad bridges the provisions of sections 2 and 3 of chapter 105 of the Revised Laws relating to highway railings erected by towns, and that the railing

on the bridge at Andover must be deemed legally sufficient, since it was approved by the State Highway Department at the time of its construction.

There is nothing in the statute itself, however, which indicates an intention to include railroads within its terms and, even if there were, there is no claim that the defendant so far complied with the provisions of the statute as to request the State Highway Department to examine and approve the railing within three years of the accident. See R. L., c. 105, s. 3.

According to the undisputed testimony, the nine-inch wooden wheel guard which ran along the base of the fence conformed in height merely to the minimum requirements of the American Association of State Highway Officials. Lewis E. Moore, a consulting engineer, testified that in his opinion the location of the bridge and the surrounding conditions required the installation of a twelve-inch curb. The plaintiffs' evidence tended to prove that the car struck the wheel guard at an angle of 40 degrees and at a speed of 15 or 20 miles an hour. Assuming this evidence to be true, Mr. Moore testified that a twelve-inch curb, even if converted into a ramp by ice and snow, would have prevented the accident, and that the nine-inch wheel guard, though free from ice or snow, would not have stopped the car.

The mere fact that the bridge was built with Federal aid and approved by Federal authorities did not relieve the defendant from liability as a matter of law. There was no Federal order making imperative the construction of the bridge, and the Federal standards, which were the same as those of the American Association of State Highway Officials, did not preclude the defendant from installing a curb that was higher than the minimum requirement. See *McGettigan* v. *Railroad*, 268 N. Y. 66, 72.

It was held on the former transfer that the question of the defendant's causal negligence was for the jury, and nothing appears in the present record which calls for a different conclusion.

It is necessary, however, that the verdicts be set aside.

Dorothy Young, who was riding in the MacDonald automobile when the accident occurred, testified at both trials. Her testimony on each occasion related to the operation of the automobile and not to the condition of the bridge. She testified that the car rounded the curve at a speed of 30 or 35 miles an hour and entered the bridge without any reduction in speed. She was a minor at the time of the accident and suits were brought by Herbert L. Young, individually

and as her father and next friend, against both Roselle MacDonald and the railroad. The sum of $200 was paid by the railroad in consideration of Mr. Young's covenant not to sue (see 92 N. H. 455, 462, 463), and the jury at the first trial returned verdicts in his favor against Roselle MacDonald.

At the trial now under review, the writ in the next-friend action against the railroad was admitted in evidence, subject to the defendant's exception, on the issue of Miss Young's credibility. This was error. Miss Young was of course bound by the legal proceedings taken in her behalf (*Beliveau* v. *Company*, 68 N. H. 225, 228), but since there was no inconsistency in the claim that both the defendant and Miss MacDonald were guilty of negligence contributing to the accident, the fact that the writ in the action against the railroad alleged negligent construction of the bridge could have no legitimate tendency to discredit Miss Young's testimony concerning the negligent operation of the car. See *Masterson* v. *Railway*, 83 N. H. 190, 193.

John W. Childs, the bridge engineer for the State Highway Department, had died before the second trial and a transcript of his testimony given at the first trial was admitted in evidence. The defendant objected to a question which had been asked Mr. Childs by plaintiffs' counsel on cross-examination without objection at the first trial. This question was as follows: "Would you be surprised if the curb there [referring to a bridge at Boscawen] was fourteen inches high?" The Court ruled that the question must stand as it was, and the defendant excepted.

The inquiry was improper since it was based on the unsupported assumption that the curb on the Boscawen bridge was of the height stated. *Smith* v. *Bailey*, 91 N. H. 507, 512; *Connell* v. *Company*, *ante*, 244, 246.

It is the plaintiffs' contention, however, that an objection which was available but not made at the first trial cannot be urged at a later trial. While the authorities on the subject are sparse and in conflict (3 Jones, Ev., 2d *ed.*, 2156, 2157), we incline to the view that when testimony given by a witness at a former trial is introduced, it is open to all proper objections and exceptions precisely as though it were the witness' deposition. In the case of *Ætna Ins. Co.* v. *Koonce*, 233 Ala. 265, 268, it is said: "Such testimony, when offered, is subject to the same objections going to the substance of the testimony, or the competency of the witness, as if the witness were testifying on the stand." This is the rule in New York under

the provisions of the Code. *Murphy* v. *McMahon*, 167 N. Y. S. 270, 272. As to the rule applicable to depositions, see *Graves* v. *Railroad*, 84 N. H. 225, 227.

The defendant requested the Court to instruct the jurors that if they found that the fence and curb were approved by the State Highway Department, they should consider that fact in determining whether or not the railroad exercised due care in the design and construction of the bridge. This request was denied subject to the defendant's exception.

The Presiding Justice instructed the jury that nothing the State Highway Department could do or did do would in any way relieve the railroad from its obligation to build and maintain the crossing in a reasonably safe condition for public use. The defendant excepted to this instruction on the ground that it was not supplemented by the substance of the foregoing request.

The standards of the State Highway Department were those of the American Association of State Highway Officials, and it could be found that the design of the bridge as a whole was approved by the Highway Department as conformable to the Association's requirements, and that those requirements were the same in 1940, when the accident occurred, as they were in 1926, when the bridge was constructed.

It is the rule in this jurisdiction that although compliance with generally prevailing standards does not absolve a defendant from liability as a matter of law, it is evidence from which due care may be inferred. *Bouley* v. *Company*, 90 N. H. 402, 403; *Howe* v. *Jameson*, 91 N. H. 55, 57; *Hood* v. *Nashua*, 91 N. H. 98, 100. While the defendant's request did not call for a statement of this rule of law in express terms, it did so by clear implication. The rule should have been given in some appropriate form. *Burke* v. *Railroad*, 82 N. H. 350, 361. See, also, *McCarthy* v. *Souther*, 83 N. H. 29, 34.

Questions decided on the former transfer and questions not likely to arise hereafter have not been considered.

*New trials.*

BURQUE, J., was absent: the others concurred.