Hillsborough, ⎫ No. 3633.
Feb. 4, 1947. ⎭

LUCILLE HOLT *v.* FERNAND GRIMARD.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Langdell* orally), for the plaintiff.

*Thorp & Branch (Mr. Branch* orally), for the defendant.

DUNCAN, J. Shortly before the plaintiff's automobile arrived at the scene of the accident, the defendant stopped his automobile at the side of the road beyond the crest of a hill, to permit some of the passengers to alight temporarily. The automobile was wholly off the travelled way, and its lights were extinguished. Upon the passengers' return, the defendant turned on the lights, but finding that the starter failed to work successfully, again extinguished them, and requested two of the passengers to push the car along the slight downgrade. It

could be found that the vehicle, without lights, was so pushed a distance of approximately fifteen feet, diagonally out onto the travelled way. The motor then started, the two passengers undertook to reenter the rear seat through doors which had remained open, and almost instantly the left rear of the automobile was struck by the right front of the plaintiff's automobile. The defendant testified that as soon as the motor started, he turned on the lights. The plaintiff's evidence warranted a finding that at all times while the defendant's automobile was visible from the plaintiff's car, the lights were out, and the rear doors open.

The plaintiff's automobile was travelling at a speed of thirty-five to forty miles an hour as it ascended the hill. It was operated by Charles Stephens, the plaintiff being the only other occupant of the front seat. The driver was unfamiliar with the highway, but it was free from ice and snow, and comparatively straight. The weather was clear. The defendant's automobile was first seen, directly ahead in the highway, as the plaintiff's automobile came over the top of the hill and its lights deflected downward. The operator testified that he applied the brakes at once, but because they locked, was unable to turn the vehicle far enough to the left to avoid collision.

Construed most favorably to the plaintiff, the evidence warranted a finding that the defendant was negligent. It could be found that in starting his car in the manner already described, he entered upon the travelled way without lights, and without undertaking, after his vehicle was in motion, to watch for vehicles approaching from the rear. It could be found that a glance to the rear would have enabled the defendant to see the lights from the plaintiff's automobile in season to avert the accident. The motor could have been started by pushing the automobile along the shoulder, which was wide and firm for some distance.

The defendant argues strongly that the operator of the plaintiff's car was conclusively shown to be negligent because of the speed at which he drove over the top of the hill. In support of his position he relies upon *Fine* v. *Parella*, 92 N. H. 81, and *Tufts* v. *White*, 92 N. H. 158. In the latter case, it was the plaintiff's own claim that visibility at the top of a grade was limited to twenty feet by a blanket of fog into which his automobile was driven at a speed requiring a stopping distance of sixty to sixty-five feet. The evidence of contributory negligence was plain, and thought to be conclusive. In the case before us, there was no fog to obscure vision. So far as appears, there was nothing to affect the view ahead, except darkness and the hill which

intervened between the two vehicles until the plaintiff's automobile reached some point at or near the top. The *Tufts* case is not so analagous as to be controlling. The same may be said of *Cole* v. *Morse*, 85 N. H. 214, cited in the *Tufts* case. There it appeared that the defendant undertook to pass an automobile on a hill, the grade of which was such that he could not see over the crest. It could be found that although he knew the road to be heavily travelled, he persisted in his attempt to pass, travelling on the lefthand side for a distance of several hundred feet, without utilizing the opportunity to drop behind before reaching the top of the hill. There his automobile collided with another, travelling in the opposite direction. The defendant's conduct in so travelling "in the line of opposing traffic," where obstacles "reasonably to be expected" were obscured by the hill, was held to warrant a finding of gross negligence. *Cole* v. *Morse, supra*, 217.

In *Fine* v. *Parella, supra*, it was pointed out that if the probability of encountering careless conduct on the part of others is so great that the ordinary man would prepare to meet it, then it is careless not to do so. *Tullgren* v. *Company*, 82 N. H. 268, 276; *Himmel* v. *Finkelstein*, 90 N. H. 78. But the court there also said (*p.* 83): "The situation may be such that careless conduct of others is not a fair requirement of anticipation, and as a general principle this is the rule." The issue in that case was whether the evidence permitted a finding of negligence. Here the question is whether the evidence requires such a finding.

Whether or not the plaintiff was careless under the circumstances disclosed by the evidence in this case was a question for the jury. It could be found that the plaintiff's operator exercised some care. If it also could be found that he was inattentive, the finding was not required. There was evidence that he applied the brakes as soon as the defendant's automobile was visible. The highway was practically free from traffic, and a speed of thirty-five to forty miles an hour was not necessarily to be deemed unreasonable. The evidence concerning the hill upon which the accident occurred was far from conclusive. There was no testimony concerning its height or other physical characteristics, except as the grade was described as "medium." The jury was shown three different hills within a distance of eight-tenths of a mile, and each of these was identified by some witness as the scene of the accident.

The evidence tended to establish that the defendant's car was beyond the brow of the hill and somewhat on a downgrade. It could be found to have been wholly upon the travelled way and two feet in

from the easterly edge. The width of the travelled way was not stated. With its doors open the automobile would have obstructed ten feet of the highway. The only estimate of the distance between the top of the hill and the point of collision (200 feet), was given by a witness who had testified on deposition that he could not say what the distance was. There was evidence that tire or "skid" marks measured after the accident were found to be seventy-five to eighty feet long.

There was no evidence of the distance at which the plaintiff's lights would illuminate objects ahead, or of the distance within which the automobile could be stopped at any given speed. Witnesses for the plaintiff testified that as the lights of her car came down onto the highway when it topped the hill, the defendant's car was "right there . . . right directly in front." The passenger who was just entering the defendant's car at the time of the collision testified that as he got in, he glanced back and saw the light from the plaintiff's automobile and that the accident happened "just in a flash."

The burden of establishing contributory negligence was upon the defendant, who was not entitled to a directed verdict upon this issue when a finding of negligence was not compelled and it could be found that the plaintiff exercised some care. *Dennis* v. *Railroad, ante,* 164; *Cyr* v. *Railroad,* 88 N. H. 278, 282; *Halley* v. *Brown,* 92 N. H. 1. If the defendant were found negligent, it was properly for the jury to determine whether the conditions were such as reasonably to require the operator of the plaintiff's car to anticipate the " 'occasional negligence' which is one of the expectable incidents of highway traffic" (*Himmel* v. *Finkelstein,* 90 N. H. 78, 79), and whether he used ordinary care under the circumstances which might be found to exist upon the conflicting testimony. *Everett* v. *Company, ante,* 43; *Gagnon* v. *Krikorian,* 92 N. H. 344. See also, *Jacobs* v. *Moniz,* 288 Mass. 102; *Bresnahan* v. *Proman,* 312 Mass. 97.

*New trial.*

BRANCH, C. J., did not sit; the others concurred.

---

### MEMORANDUM

Mr. Justice Burque died in Nashua, New Hampshire, on the ninth day of February, 1947.