Merrimack,
No. 5815.

BERTHA ALLEN & a.

*v.*

STATE.

December 30, 1969.

*Burns, Bryant, Hinchey & Nadeau* and *Robert P. Shea* ( *Mr. Shea* orally ), for the plaintiffs.

*Devine, Millimet, McDonough, Stahl & Branch* ( *Mr. Shane Devine* orally ), for the defendant.

GRIMES, J. These are actions at law to recover for personal injuries sustained as a result of an accident on August 7, 1962, while the plaintiffs were in the process of getting on a double chair ski lift of the defendant's for the purpose of descending to the base station. There was a trial by jury resulting in verdicts for the defendant in each action. The exceptions of the plaintiffs were transferred by *Bownes*, J.

The defendant owns and operates, among other facilities, a double chair lift at Sunapee State Park in Sunapee. The lift in question, when first installed in 1948, was a single chair lift. In order to increase its capacity, it was converted in 1962 to a double chair lift by the company which originally constructed the lift. When converted, single chairs were replaced by chairs capable of holding one passenger on each side of a steel pipe which at the top is attached to a cable and which at the bottom is attached to the so-called chair. The cable moves continuously when the lift is in operation and carries the chairs along with it up or down the mountain. The chairs, therefore, follow one another over the loading platform at the same speed. Each chair (one on each side of the center pipe) is about 17 inches wide and has an iron pipe armrest on the outside.

Each chair is equipped with a safety bar consisting of a half-inch iron pipe, which is hinged near the center pipe and when open protrudes straight forward. The bottom of the safety bar is attached to a footrest which also projects forward when the safety bar is open. When a passenger is seated, he pulls the safety bar over in front of him which in turn pulls the footrest under his feet. During the process of loading, the safety bars on each side are supposed to point directly forward so that they are in close proximity to each other.

The lift is used by skiers during the skiing season and by sight-seers during the rest of the year. The proper way for a passenger to get on the lift is to stand in footprints painted on the platform, look over his *inside* shoulder, wait for the chair which is steadied and guided by an attendant, and sit in it as it comes beneath him. He then pulls the safety bar (and footrest) in front of him and rides up or down the mountain.

Both plaintiffs with Mr. Grant, the brother of Mrs. McGee, had come to the park from Massachusetts for the day. Mrs. McGee was 62 years old and her daughter, Mrs. Allen, a widow, was

44 years old. After walking around at the base and having a light lunch, they decided to go up on the lift. They talked with an attendant who, on inquiry, said it was safe, purchased tickets, and safely ascended to the top. Neither of them had been on such a lift before.

After spending some time at the top, they decided to descend. Mr. Grant went first. After he was safely aboard, the two women stood in the painted footprints and waited for their chairs. There were attendants at the top, but there is a dispute as to what the attendants did. Mrs. Allen stood on the right as they faced down the mountain and both women were looking over their inside shoulder as they waited for the chairs. Before the chairs arrived, Mrs. Allen turned and looked over her right, or outside, shoulder, and an attendant shouted "turn the other way." The safety bar on her side caught Mrs. Allen's raincoat and she was carried forward and caused to fall on the wooden platform. Mrs. McGee claims she was hit in the back of the legs by her chair, was carried forward, and fell off the end of the wooden platform before the lift came to a stop as a result of the safety buttons being activated by an attendant. She claims she never was seated on the chair.

The plaintiffs claim that when they sought to descend the mountain, no one was assisting them or guiding the chairs. They claim that the safety bars were not fully open, thus causing a reduced space in which to get seated. It was the duty of the attendant to close any undue gap between the bars if any existed before the chairs reached the passengers.

An attendant testified that he was guiding the chair, that there were about two or three inches between the safety bars, which according to him was not unusual, that Mrs. Allen turned to look over her outside shoulder and that he told her to look the other way. He said that Mrs. McGee had been seated in the chair but attempted to get off on seeing what happened to Mrs. Allen. He said he ran to the safety button which stopped the lift. It is not disputed that the lift will coast some distance after the power is shut off. The chair carried Mrs. McGee off the end of the platform where she dropped some ten feet to the ground.

The plaintiffs claim that the Trial Court failed to fully and correctly instruct the jury and erred in not granting certain of their requests for instructions. The Court instructed the jury on negligence and causation with special emphasis on the "cir-

cumstances" and told them that the defendant was acting as a common carrier and was to be held to a high standard of care, that it owed the duty of care and caution to protect passengers consistent with the practical operation of the lift, that it had the duty to recognize the great potential dangers and should have taken all practical precautions to guard the passengers against them but was not an insurer and did not have the duty to make the lift absolutely safe, and had a right to assume that passengers would use the lift in a reasonable and careful manner. The Court then further instructed the jury on the plaintiffs' various specific claims of negligence without repeating his previous instructions on the standard of care owed by the defendant as a common carrier.

On the plaintiffs' claim of negligence for lack of instructions, which is the subject of the dissent, the Court told the jury it was "up to you to determine whether or not they were so instructed, and furthermore, whether the failure to so instruct was negligent on the part of the defendant through its employees.

"Now you must, of course, take all of the circumstances surrounding this accident into consideration. There has been testimony here about signs at the bottom of the chair lift and at the top. You are entitled to take signs into consideration, whether or not you find that there were signs and if so what effect those signs should have had on the conduct of the plaintiffs themselves; and their apparent age and what bearing that should have on the conduct of the chair lift attendants."

Whether instructions are given on the duty of the defendant as to each of the plaintiffs' claims, is a matter which is best left to the discretion of the Trial Judge. If the jury has been fully and clearly instructed on negligence and causation and the claims of the parties are fairly set forth, it is within the discretion of the Trial Judge whether to instruct the jury as to the specific application of these rules of law to the claims of the parties and the particular evidence in the case. *Paradis* v. *Greenberg*, 97 N. H. 173, 175, 176, 83 A. 2d 606; *Colby* v. *Lee*, 83 N. H. 303, 307, 142 A. 115.

It is our opinion that read as a whole the charge made it clear that the jury was to apply the standard of care previously defined as applicable to a common carrier in considering each claim of fault made against the defendant.

The plaintiffs claim that the Court should not have left it to the

jury to determine whether a failure to instruct the plaintiffs constituted negligence. It is true that, as the plaintiffs claim, it has been held that a common carrier has a duty to instruct when there are special circumstances, but it has also been said that in the absence of "apparent necessity," assistance is not required. *Beaudet* v. *Railroad*, 101 N. H. 4, 5, 131 A. 2d 65. We think it would have been error for the Judge to have instructed the jury that assistance and instructions were as a matter of law required as requested by the plaintiffs. The plaintiffs had safely ascended the mountain on the lift and gave no indication to the attendants at the top that they were not acquainted with the use of the lift or needed instructions. They asked no questions of any one of the three attendants as to its use before attempting to descend, although there was evidence that signs in the area admonished those who were unfamiliar with its use to inquire of the attendant. The jury was entitled to find that the attendants were not negligent in failing to instruct the plaintiffs.

Under these circumstances, we hold also that it was not error for the Court to instruct the jury that the defendant had a right to assume that "passengers using the chair lift would do so in a reasonable and careful manner." As a general rule, persons are not required to anticipate careless conduct on the part of others and may therefore assume that they will act reasonably. *McCarthy* v. *Souther*, 83 N. H. 29, 31, 137 A. 445; *Fine* v. *Parella*, 92 N. H. 81, 83, 25 A. 2d 121; *Holt* v. *Grimard*, 94 N. H. 255, 257, 51 A. 2d 149. Of course if there are circumstances which would cause a reasonable person to anticipate and guard against careless conduct, then it is negligence not to do so. No such circumstances existed in this case, however.

Plaintiffs contend that the Trial Court erred in submitting the issue of their contributory negligence to the jury. However, we think the evidence would support a finding of causal negligence on the part of each plaintiff. They could have been found negligent in not asking for assistance and instructions. Since the chairs follow one another across the loading platform at a uniform speed, Mrs. Allen could have been found negligent in not anticipating her chair and not seeing it sooner, for turning her head away from the chair as it was approaching, and in not avoiding the safety bar. Mrs. McGee could have been found negligent on her story in not sitting in the chair when it reached her and on the testimony of the attendant in attempting to get out once she was seated.

The Court instructed the jury that in assessing the conduct of Mrs. McGee after she saw her daughter in difficulty, they "should take into consideration that her daughter was in apparent danger . . . and you have to take into consideration that Mrs. McGee was under stress and that she did not have perhaps proper time to think about the actions she did take. So in judging ( her ) conduct, take into consideration that her daughter was faced with danger; that she herself was under stress . . . and then determine whether or not you think she acted as the ordinary person of average prudence would have acted under the circumstances."

Plaintiff McGee complains that this instruction is not sufficiently full and accurate. While it may not have been as detailed an explanation of the emergency doctrine as is found in such cases as *Carney* v. *Railroad*, 72 N. H. 364, 372, 57 A. 218, quoted in plaintiffs' brief, nevertheless we think it sufficiently conveyed the thought to be expressed. The Presiding Justice was at liberty to choose his own form of words. *Tucker* v. *Peaslee*, 36 N. H. 167, 178; *Colby* v. *Lee*, 83 N. H. 303, 142 A. 115.

The plaintiff McGee further complains that, although requested, the charge did not include reference to the instinctive action doctrine which when applicable should, when requested, be included in the instructions. *Kardasinski* v. *Koford*, 88 N. H. 444, 190 A. 702. Under the emergency doctrine, if a person is called upon to act in an emergency not created by his own negligence, he may still be found to be negligent for what he does or fails to do while acting in the emergency, but the fact that he was acting under the stress of the emergency is a factor or circum-stance to be considered in determining whether he was negligent. Where, however, an emergency not due to his own negligence leaves no time for thought, so that he must act instinctively, he cannot be held responsible for what he does under such circum-stances unless he is shown to be unfit to act in such an emer-gency. *Miller* v. *Daniels*, 86 N. H. 193, 196, 166 A. 30; *Collette* v. *Railroad*, 83 N. H. 210, 217, 140 A. 176; *Kardasinski* v. *Koford, supra*; *Cyr* v. *Sanborn*, 101 N. H. 245, 250, 140 A. 2d 92.

It was said in *Kardasinski* v. *Koford, supra*, 447, that it could not be ruled as a matter of law that instinctive action was not involved under the circumstances of that case when the actor had three or four seconds in which to act, and that it was therefore a question of fact for the jury.

With the lift running at the rate of 250 feet per minute, a chair would be traveling a little over 4 feet per second. Since there was evidence that the end of the platform was nine or ten feet from the loading position, it could be found that she had less than three seconds in which to act. This would call for an instruction on the instinctive action doctrine as requested ( *Kardasinski* v. *Koford, supra* ), and it was error not to give it. Since we cannot say that Mrs. McGee was not prejudiced by this failure, she is entitled to a new trial.

Plaintiffs excepted to the admission of evidence relating to the rules and regulations of the New Hampshire Passenger Tramway Safety Board and the fact that it had licensed the chair lift in question. Evidence relating to these rules and regulations was introduced initially by the plaintiff in an attempt to show that the lift did not meet the standards of the Board. This could lead to an inference that it had not been licensed. It was proper, therefore, to show what the rules and regulations were and that the lift was licensed. The instructions of the Court both at the time of the admission of the evidence and in its charge adequately instructed the jury on the proper use of this evidence. See *Calley* v. *Railroad*, 93 N. H. 359, 363, 42 A. 2d 329.

We have examined the other rulings of the Court to which exceptions were taken and find no error in them.

> *New trial for plaintiff McGee.*
> *Judgment for the defendant in*
> *the action of Bertha Allen.*

KENISON, C. J. and GRIFFITH, J., concurred; DUNCAN and LAMPRON, JJ., dissented, in part.

DUNCAN and LAMPRON, JJ., *dissenting in part*: We agree that the issue of whether the defendant was under "a duty to give instructions and render assistance to the plaintiffs in loading on the chair lift" ( plaintiffs' request 3 ) was a question for the jury, and that the plaintiffs' request which would have imposed that duty as matter of law was properly denied. See *Murray* v. *Boston & Maine R. R.*, 107 N. H. 367, 224 A. 2d 66. However, the request was adequate to call attention to the issue, and it was incumbent upon the Trial Court "to fully and correctly instruct the jury as to the law applicable to the case . . .." *Burke* v.

*Railroad*, 82 N. H. 350, 361, 134 A. 574; *Perlman* v. *Haigh*, 90 N. H. 404, 10 A. 2d 228. The Court's instructions were as follows: "Now they also say that the plaintiffs were not instructed in the proper manner of loading the chairs, and it is up to you to determine whether or not they were so instructed, and furthermore, whether the failure to so instruct was negligent on the part of the defendant through its employees."

The jury had previously been instructed that the defendant had "a right to assume that passengers using the chair lift would do so in a reasonable and careful manner." The plaintiffs, in addition to excepting to the denial of their request relating to the "instructions . . . in loading on the chair" excepted to the instruction last quoted, upon the ground that "the defendant knew through their failure to give instructions and other circumstances that the plaintiffs were ignorant of the proper manner in which to use the chair and therefore should not have expected them to use it in a proper manner."

The instructions given did not furnish the jury with adequate standards by which to make the determination submitted to them. There was evidence from which it could be found that the defendant had superior knowledge of the risk that the plaintiffs' clothing might catch on the safety bars and that its agents should have appreciated that the plaintiffs were unaware of this risk. If it were so found, it could also be found that the defendant had a duty to warn the plaintiffs or give them adequate instructions calculated to avoid the danger. *Wheeler* v. *Railway*, 70 N. H. 607, 617, 50 A. 103; *Musgrave* v. *Company*, 86 N. H. 375, 377, 169 A. 583. "If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure to do so is negligence." *Tullgren* v. *Company*, 82 N. H. 268, 276, 133 A. 4.

The defendant was entitled to assume that the plaintiffs would use the lift "in a reasonable and careful manner," only if it had no reason to think otherwise. See *Eichel* v. *Payeur*, 106 N. H. 484, 488, 214 A. 2d 116. In view of the evidence, the omission of this qualification from the instruction given was prejudicial and misleading. Because of the inadequacies of the instructions to the jury upon these issues, we are of the opinion that there should be new trials in both cases.